IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **ADVANCED MARKETING** | : | **Case No. 06-11480 (CSS)** |
| **SERVICES, INC., a Delaware** | : | |
| **corporation, et al.,**[1] | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | |
| | : | |

**AMENDED NINTH MONTHLY APPLICATION OF CAPSTONE ADVISORY
GROUP, LLC, FINANCIAL ADVISORS TO THE DEBTORS,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM SEPTEMBER 1, 2007 THROUGH SEPTEMBER 30, 2007)**

| | |
|---|---|
| Name of Applicant: | Capstone Advisory Group, LLC |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | February 12, 2007 (nunc pro tunc to December 29, 2006) |
| Period for which compensation and reimbursement is sought: | September 1, 2007 through September 30, 2007 |
| Amount of Compensation sought as actual, reasonable and necessary during the Month (80%): | $ 81,256.00  (80% of $101,570.00) |
| Original Amount of Success Fee sought: | $300,000.00  (80% of $375,000.00) |
| Amended Amount of Success Fee sought:[2] | $120,000.00  (80% of $150,000.00) |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary during the Month (100%): | $   1,778.75 |
| Amended Total | $203,034.75 |

---

[1]  The Debtors are the following entities: Advanced Marketing Services, Inc., a Delaware corporation, Publishers Group Incorporated, a California corporation, and Publishers Group West Incorporated, a California corporation.

[2]  As per an agreement with the Official Committee of Unsecured Creditors ("Committee"), Capstone Advisory Group has agreed to seek and the Committee has agreed not to object to Capstone's Amended Success Fee request.

This is an: __X___ monthly _____ interim _____ final application

This is the Ninth Monthly application filed. Disclosure for all periods is as follows:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **ADVANCED MARKETING** | : | **Case No. 06-11480 (CSS)** |
| **SERVICES, INC., a Delaware** | : | |
| **corporation, et al.,[3]** | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | |
| | : | |

## AMENDED NINTH MONTHLY APPLICATION OF CAPSTONE ADVISORY GROUP, LLC, FINANCIAL ADVISORS TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED (FOR THE PERIOD FROM SEPTEMBER 1, 2007 THROUGH SEPTEMBER 30, 2007)

Pursuant to sections 327, 330 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code", Fed. R. Bankr. P. 2016, the Retention Order (as defined below), the Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Interim Compensation Order"), and Del.Bankr.LR 2016-2, Capstone Advisory Group, LLC ("Capstone"), Financial Advisors to Advanced Marketing Services, Inc., a Delaware corporation ("AMS"), and its direct and indirect subsidiaries, Publishers Group Incorporated, a California corporation ("PGI"), and Publishers Group West Incorporated, a California corporation ("PGW"), each as a debtor and debtor-in-possession (collectively, the "Debtors"), hereby applies for an order allowing it (i) compensation in the amount of 80% of $101,570.00, or $81,256.00 , for professional services rendered by Capstone as financial advisors for the Debtors, (ii) compensation in the amount of 80% of $150,000.00, or $120,000.00, for a "Success Fee" (as detailed below) and (iii) reimbursement for

---

[3] The Debtors are the following entities: Advanced Marketing Services, Inc., a Delaware corporation, Publishers Group Incorporated, a California corporation, and Publishers Group West Incorporated, a California corporation.

the actual and necessary expenses incurred by Capstone in rendering such services in the amount of $1,778.75, (the "Ninth Monthly Fee Application"), in each case for the period from September 1, 2007 through September 30, 2007 (the "Fee Period"). In support of this Application, Capstone respectfully states as follows:

## Monthly Fee Applications Covered Herein

1. Pursuant to the procedures set forth in the Administrative Fee Order, professionals may apply for monthly compensation and reimbursement (each such application, a "Monthly Fee Application"), and the notice parties listed in the Administrative Fee Order may object to such request. If no notice party objects to a professional's Monthly Fee Application within twenty (20) days after the date of service of the Monthly Fee Application, the applicable professional may submit to the Court a certification of no objection whereupon the Debtors are authorized to pay interim compensation and reimbursement of 80% of the fees and 100% of the expenses requested.

2. Furthermore, and also pursuant to the Administrative Fee Order, professionals are to file and serve upon the notice parties a request "Interim Fee Application" for Court approval and allowance of the Monthly Fee Applications filed during the four-month interval covered by that Interim Fee Application. If the Court grants the relief requested by the Interim Fee Application, the Debtors are authorized and directed to pay the professional 100% of the fees and expenses requested in the Monthly Fee Applications covered by that Interim Fee Application less any amounts previously paid in connection with the Monthly Fee Applications. Any payment made pursuant to the Monthly Fee Applications or an Interim Fee Application is subject to final approval of all fees and expenses at a hearing on the professional's final fee application.

3. Pursuant to an Application submitted to the Court on or about January 23, 2007, and by a Court order dated February 12, 2007 (the "Retention Order"), Capstone was retained as financial advisors for the Debtors, nunc pro tunc to December 29, 2006.

4. Capstone is a firm of financial advisors specializing in insolvency restructuring and related matters. Since being retained by the Debtors, Capstone has rendered professional services to the Debtors as requested and as necessary and appropriate in furtherance of the interests of the Debtors' estates. Capstone respectfully submits that the professional services that it rendered on behalf of the Debtors were necessary and have directly benefited the Debtors' estates and have contributed to the effective administration of these cases.

5. This is the Ninth Monthly Fee Application for compensation for services rendered that Capstone has filed with the Bankruptcy Court in connection with the representation of the Debtors in these chapter 11 cases.

6. Capstone has not filed any other Monthly Fee Applications or Interim Fee Applications for the Fee Period.

## Description of Services, Fees and Expenses

7. During the Ninth Monthly Period, the Applicant rendered professional services aggregating a total of 214.2 hours in the discharge of its duties as financial advisor and bankruptcy consultant to the Debtors. The Applicant is seeking an interim allowance for compensation of professional services rendered to the Debtors of $81,256.00, representing 80% of fees incurred, compensation of a Success Fee of $300,000.00, representing 80% of the Success Fee earned, and reimbursement of expenses in connection therewith of $1,778.75. The Applicant, respectfully, submits the following:

a) The Applicant believes that the fees applied for herein for professional services rendered in performing accounting and advisory services for the Debtors in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtors' financial accounting resources and the results obtained.

b) The Applicant is requesting approval of its Success Fee. In connection with Capstone's services related to the restructuring and refinancing of the Debtors', Capstone's engagement letter dated July 6, 2006 (attached hereto as Attachment C) provided for the Success Fee of 30% of any transaction fee earned by the investment banker. On July 19, 2007, this court approved the Transaction Fee of Houlihan Lokey Howard & Zukin ("HLHZ") in the amount of $1,250,000.00. As a result, Capstone, in its original Ninth Monthly Fee Application, sought the approval of its Success Fee of 30% of $1.25 million or $375,000.00. Subsequently, Capstone reached an agreement with the Committee, whereby Capstone would seek and the Committee would not object to a reduced Success Fee of $150,000.00. Capstone also agreed that it would not to seek any further success fee or fee enhancement in these cases. In addition, the Committee agreed that it will not object to any other aspect of Capstone's fee applications filed to date, meaning through and including Capstone's request for September 2007.

As stated in Capstone's Retention Order, consideration of the Success Fee was continued until such time as Capstone sought approval upon further application to this Court and notice to interested parties.

The Applicant's substantial efforts resulted in the Debtors' estates realizing the highest and otherwise best value for the Debtor's estates and creditors for the majority of their assets. Capstone's efforts were in conjunction with and in support of the Debtors' investment bankers and were not duplicative in any way. Capstone's involvement spanned both pre- and post-petition periods and included (but was not limited to) gathering and disseminating substantially all due diligence materials; preparing business plans and financial forecasts; preparing borrowing base projections; discussing operations and financial performance of the company with potential lenders and investors; acting as the liaison between potential interested parties, the investment bankers and the Debtors; acting as the Debtors' brokers in the Baker & Taylor transaction (together with HLHZ and the prior investment banking firm), negotiating with existing and potential lenders; reviewing, commenting on and negotiating the terms of proposed transactions; and providing the Board of Directors with periodic updates of restructuring efforts.

c) All expenses were billed at actual cost, exclusive of amortization of the cost of investment, equipment or capital outlay.

d) The disbursements and expenses have been incurred in accordance with Capstone's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable Capstone to devote time beyond normal office hours to matters that imposed

extraordinary time demands. Capstone has endeavored to minimize these expenses to the fullest extent possible.

e) Capstone expended an aggregate of 214.2 hours, all of which was expended by the professional staff of Capstone. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. A small staff was utilized to optimize efficiencies and avoid redundant efforts. The staff of the Debtors or their advisors has been utilized where practical and prudent.

f) Capstone's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, Capstone's per diem rates for professionals of comparable experience are 10% to 20% lower than its competitors, the "Big-Four" accounting firms and certain other nationally-recognized specialty firms.

g) Because Capstone's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of Capstone's professionals, in many instances only one or two Capstone representatives attended meetings or conference calls or performed specific functions.

h) Mark C. Rohman, a senior member of the firm in charge of this case, directed the activities of the Capstone team, calling upon his more than twenty years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter

i) To the best of the Applicant's knowledge and belief, there has been no duplication of services between the Applicant and any other accountants or consultants to the bankruptcy estate.

j) Capstone's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtors.

k) In providing a reimbursable service such as copying or telephone, the Applicant does not make a profit on that service In charging for a particular service, Capstone does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, Capstone requests reimbursement only for the amount billed to Capstone by such third party vendor and paid by Capstone to that vendor.

l) Annexed hereto as Attachment B are summaries of fees and hours by professional and by task during the Ninth Monthly Period, as well as a summary of expenses for the Ninth Monthly Period.

m) Pursuant to Rule 2016, Capstone states that no compensation to be received in this proceeding will be shared with any person or entity outside of Capstone and that no compensation has been paid or promised to the Applicant in connection with the compensation sought in this Application except as disclosed herein. No prior application has been made to this or any other Court for the relief requested herein for the Compensation Period, nor has any payment been received by Capstone on account of its accounting and financial advisory services rendered or on account of the out-of-pocket expenses incurred in connection therewith.

n) As stated in the Declaration of Mark C. Rohman, annexed hereto as Exhibit I, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Debtors solely in connection with these cases.

8. The detail of services provided by Capstone during the Fee Period is included in Attachment B.

## Relief Requested

9. By this Ninth Monthly Fee Application, Capstone requests that the Court approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses incurred by Capstone for the Fee Period, and as detailed in the Monthly Application. As stated above, the full scope of services provided and the related expenses incurred are fully described in Attachment B.

## Disinterestedness

10. As disclosed in the Declaration of Mark Rohman, (the "Declaration") Capstone does not hold or represent any interest adverse to the estates, and had been, at all relevant times, a disinterested person as that term is defined in section 101(4) of the Bankruptcy Code as modified by section 1107 of the Bankruptcy Code.

11. Capstone may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors and the chapter 11 cases. Capstone disclosed in its Retention Application its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts. Capstone will provide supplemental Declarations when necessary and when Capstone becomes aware of material new information.

WHEREFORE, Capstone respectfully requests, in accordance with the Administrative Fee Order,

a) granting Capstone an allowance of (i) $81,256.00 as compensation for reasonable and necessary professional services rendered to the Debtors (80% of fees incurred during the Monthly Period), (ii) $120,000.00 as compensation for a Success Fee (80% of Success Fee), and (iii) of $1,778.75 for reimbursement of actual and necessary costs and expenses incurred, for a net total of $203,034.75 owing and unpaid for the Fee Period from September 1, 2007 through September 30, 2007; and

b) authorizing and directing the Debtors to pay to Capstone the outstanding amount of such sums.

Date: <u>November 5, 2007</u>

Capstone Advisory Group, LLC

By _____
    Mark C. Rohman

Capstone Advisory Group, LLC
1800 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 229-5740

**Index to Exhibits**

**Exhibit I**     **Declaration**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **ADVANCED MARKETING** | : | **Case No. 06-11480 (CSS)** |
| **SERVICES, INC., a Delaware** | : | |
| **corporation, <u>et al.</u>,**[4] | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | **Hearing Date:  To be determined** |
| | : | **Objection Deadline:  To be determined** |

Mark C. Rohman, after being duly sworn according to law, deposes and says:

a)    I am a member with the applicant firm, Capstone Advisory Group, LLC.

b)    I am familiar with the work performed on behalf of the Debtors by the employees of the firm.

c)  In its original Ninth Monthly Fee Application, Capstone sought the approval of its Success Fee of $375,000.00. Subsequently, Capstone reached an agreement with the Committee, whereby Capstone would seek and the Committee would not object to a reduced Success Fee of $150,000.00.  Capstone also agreed that it would not to seek any further success fee or fee enhancement in these cases.  In addition, the Committee agreed that it will not object to any other aspect of Capstone's fee applications filed to date, meaning through and including Capstone's request for September 2007.

---

[4]  The Debtors are the following entities: Advanced Marketing Services, Inc., a Delaware corporation, Publishers Group Incorporated, a California corporation, and Publishers Group West Incorporated, a California corporation.

d)    I have reviewed the foregoing Amended Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2, and submit that the Application substantially complies with such rule.



Mark C. Rohman, Member
Capstone Advisory Group, LLC

SWORN AND SUBSCRIBED before me
this 5th day of November, 2007

Notary Public
My Commission Expires: _Nov. 4, 2009_

HELEN M. BLAND
Commission # 1618833
Notary Public - California
Los Angeles County
My Comm. Expires Nov 4, 2009

**AMENDED NINTH MONTHLY APPLICATION OF CAPSTONE ADVISORY GROUP, LLC, FINANCIAL ADVISORS TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED (FOR THE PERIOD FROM SEPTEMBER 1, 2007 THROUGH SEPTEMBER 30, 2007)**

**ATTACHMENT A**

| Date Filed (on or about) | Period Covered | Fees (100%) | Expenses (100%) | Fees (80% of requested fees) |
|---|---|---|---|---|
| February 27, 2007 | December 29, 2006 through January 31, 2007 | $302,915.00 | $8,599.68 | $242,332.00 |
| March 20, 2007 | February 1, 2007 through February 28, 2007 | $244,841.00 | $4,850.78 | $195,872.80 |
| April 16, 2007 | March 1, 2007 through March 31, 2007 | $175,912.00 | $6,704.92 | $140,729.60 |
| May 16, 2007 | April 1, 2007 through April 30, 2007 | $59,909.00 | $1,281.27 | $47,927.20 |
| June 15, 2007 | May 1, 2007 through May 31, 2007 | $50,700.00 | $1,171.81 | $40,560.00 |
| July 16, 2007 | June 1, 2007 through June 30, 2007 | $29,885.00 | $580.77 | $23,908.00 |
| August 20, 2007 | July 1, 2007 through July 31, 2007 | $75,751.00 | $626.91 | $60,600.80 |
| September 17, 2007 | August 1, 2007 through August 31, 2007 | $98,551.50 | $1,104.95 | $78,841.20 |
| October 15, 2007 (and amended on November 5, 2007) | September 1, 2007 through September 30, 2007 | $251,570.00* | $1,778.75 | $201,256.00** |

\* As amended, includes Success Fee of $150,000.00

\*\*As amended includes 80% of Success Fee or $120,000.00

**AMENDED NINTH MONTHLY APPLICATION OF CAPSTONE ADVISORY
GROUP, LLC, FINANCIAL ADVISORS TO THE DEBTORS,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM SEPTEMBER 1, 2007 THROUGH SEPTEMBER 30, 2007)**

## ATTACHMENT B

1. Summary of Fees by Professional
2. Summary of Fees by Task Code
3. Detailed Task Descriptions
4. Summary of Expenses

**Advanced Marketing Services, Inc.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Professional**
For the Period 9/1/07 through 9/30/07

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Rohman. Mark | Member/Executive Director | $ 595 00 | 43 5 $ | 25.882 50 |
| Atkins, Monique | Managing Director | $ 450 00 | 150 2 $ | 67,590 00 |
| Seli. Gerry | Director | $ 395 00 | 20 5 $ | 8,097 50 |
| **For the Period 9/1/07 through 9/30/07** | | | **214 2** $ | **101,570 00** |

**Advanced Marketing Services, Inc.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Task Code**
For the Period 9/1/07 through 9/30/07

| Task Code | Task Description | Hours | | Fees |
|---|---|---|---|---|
| Asset Sale/Restructuring Transactions | During the Fee Application, the Applicant gathered and analyzed information on remaining assets to be sold and cure amounts related to contracts to be assumed | 9 9 | $ | 4,455 00 |
| Case Strategy/Status | During the Fee Application, the Applicant met with counsel and financial advisor to discuss case strategy and status | 5 1 | $ | 2,875 00 |
| Claims Analysis/Accounting | During the Fee Application. the Applicant analyzed. discussed and researched issues related to administrative claims. the claims register and pre- and post-petition accounts payable issues   Applicant also reconciled claims and prepared omnibus objections to claims. | 94 1 | $ | 41,217 50 |
| Court Filings/Motions | During the Fee Application, the Applicant prepared for and attended court hearings | 6 1 | $ | 2,745 00 |
| Creditors Committee Matters | During the Fee Application, the Applicant prepared information for UCC and its advisors and had discussions with UCC and its advisors regarding various bankruptcy related topics | 2 7 | $ | 1,432 50 |
| Disclosure Statement/Plan of Reorganization | During the Fee Application, the Applicant reviewed drafts of the disclosure statements and plan and prepared analysis and information for inclusion into documents | 94 3 | $ | 47,945 00 |
| Employment Applications/Fee Applications | During the Fee Application, the Applicant prepared its Monthly Fee Application and Interim Fee Application | 2 0 | $ | 900 00 |
| **For the Period 9/1/07 through 9/30/07** | | **214.2** | **$** | **101,570.00** |

| Task | Date | Professional | Hours | Detailed Time Description |
|---|---|---|---|---|
| Asset Sale/Restructuring Transactions | 9/10/2007 | Atkins, M | 0 4 | Estimating lease rejection damages for PGW leases to support sale/assignment to Perseus |
| Asset Sale/Restructuring Transactions | 9/11/2007 | Atkins, M | 0 6 | Estimating lease rejection damages for PGW leases to support sale/assignment to Perseus |
| Asset Sale/Restructuring Transactions | 9/19/2007 | Atkins, M | 1 3 | Analysis of inventory related to Baker and Taylor settlement |
| Asset Sale/Restructuring Transactions | 9/20/2007 | Atkins, M | 3 7 | Analysis of inventory related to Baker and Taylor settlement  Preparation of information for publishers |
| Asset Sale/Restructuring Transactions | 9/20/2007 | Atkins, M | 0 4 | Discussions w/ counsel re: B&T inventory and settlement execution |
| Asset Sale/Restructuring Transactions | 9/21/2007 | Atkins, M | 1 2 | Analysis of and discussions regarding inventory from the Baker and Taylor settlement |
| Asset Sale/Restructuring Transactions | 9/28/2007 | Atkins, M | 2.3 | Preparation of data files for inventory liquidation |
| **Asset Sale/Restructuring Transactions Total** | | | **9.9** | |
| Case Strategy/Status | 9/4/2007 | Rohman, M | 1 0 | Discussion with debtor and professionals regarding status of various initiatives |
| Case Strategy/Status | 9/11/2007 | Atkins, M | 1 1 | Conference call w/ Debtor management, counsel and advisors to discuss case issues |
| Case Strategy/Status | 9/18/2007 | Rohman, M | 1 5 | Prepared for and participated in call with debtors' professionals to discuss the status of various efforts |
| Case Strategy/Status | 9/25/2007 | Rohman, M | 1 5 | Prepared for and participated in call with debtors' professionals to discuss the status of various efforts related to the Plan & Disclosure Statements |
| **Case Strategy/Status Total** | | | **5.1** | |
| Claims Analysis/Accounting | 9/10/2007 | Atkins, M | 0 3 | Discussions related to reconciling tax claims |
| Claims Analysis/Accounting | 9/10/2007 | Atkins, M | 0 5 | Researching and responding to questions regarding pre-petition freight |
| Claims Analysis/Accounting | 9/11/2007 | Atkins, M | 1 0 | Researching responses related to 2nd and 3rd Omnibus Objection |
| Claims Analysis/Accounting | 9/12/2007 | Atkins, M | 1 0 | Research into claims and schedules related to Baker & Taylor contract assumptions |
| Claims Analysis/Accounting | 9/12/2007 | Atkins, M | 1 1 | Data analysis and maintenance of updated claims register |
| Claims Analysis/Accounting | 9/12/2007 | Seli, G | 1 1 | Analysis of claims / contracts assumed by Baker & Taylor |
| Claims Analysis/Accounting | 9/13/2007 | Atkins, M | 1 7 | Reconciliation and analysis of PGWs administrative claims |
| Claims Analysis/Accounting | 9/13/2007 | Atkins, M | 3 1 | Maintenance of updated claims register and analysis/objections to new claims filed |
| Claims Analysis/Accounting | 9/13/2007 | Atkins, M | 0 6 | Discussions w/ L. Ronneburg (AMS) to outline process for reconciliation of administrative claims |
| Claims Analysis/Accounting | 9/13/2007 | Seli, G | 4 1 | Analysis of claims / contracts assumed by Baker & Taylor |
| Claims Analysis/Accounting | 9/14/2007 | Atkins, M | 0 8 | Preparation of claims for PGW review and reconciliation |
| Claims Analysis/Accounting | 9/14/2007 | Atkins, M | 1 6 | Research and analysis of claims related to B&T contract assumptions |
| Claims Analysis/Accounting | 9/14/2007 | Atkins, M | 3 2 | Preparation and analysis related to 4th and 5th Omnibus Objections |
| Claims Analysis/Accounting | 9/14/2007 | Seli, G | 4 1 | Analysis of claims / contracts assumed by Baker & Taylor |
| Claims Analysis/Accounting | 9/17/2007 | Atkins, M | 2 1 | Analysis of PGW pre- and post-petition AR and issues arising w/ accounting and offsetting |
| Claims Analysis/Accounting | 9/17/2007 | Atkins, M | 3 8 | Analysis of AMS post-petition admin claims to prepare for objection |
| Claims Analysis/Accounting | 9/17/2007 | Atkins, M | 0 6 | Research and analysis into claims and schedules of Board of Director members |

Advanced Marketing Services, Inc.
Capstone Advisory Group, LLC
Detailed Time Description by Task Code
For the Period 9/1/07 through 9/30/07

| Task | Date | Professional | Hours | Detailed Time Description |
|------|------|--------------|-------|---------------------------|
| Claims Analysis/Accounting | 9/17/2007 | Atkins, M | 1 1 | Preparation of analysis of details of insider claims/schedules |
| Claims Analysis/Accounting | 9/17/2007 | Seli, G | 4 1 | Analysis of landlord lease rejection claims and preparation of detailed rejection damage calculations |
| Claims Analysis/Accounting | 9/18/2007 | Atkins, M | 0 5 | Preparation and analysis for 4th and 5th Omnibus Objection |
| Claims Analysis/Accounting | 9/18/2007 | Seli, G | 2 1 | Analysis of landlord lease rejection claims and preparation of detailed rejection damage calculations |
| Claims Analysis/Accounting | 9/19/2007 | Atkins, M | 1 2 | Analysis of claims and preparation of claims objections |
| Claims Analysis/Accounting | 9/19/2007 | Atkins, M | 1 8 | Analysis of PGW pre- and post-petition AR and issues arising w/ accounting and offsetting |
| Claims Analysis/Accounting | 9/20/2007 | Atkins, M | 1 1 | Claims reconciliation of PGW claims |
| Claims Analysis/Accounting | 9/20/2007 | Atkins, M | 1 3 | Analysis of claims and preparation of claims objections |
| Claims Analysis/Accounting | 9/20/2007 | Seli, G | 3 1 | Analysis of landlord lease rejection claims and preparation of detailed rejection damage calculations |
| Claims Analysis/Accounting | 9/21/2007 | Atkins, M | 0 6 | Discussion w/ L Ronneburg (AMS) re: PGW claims reconciliation |
| Claims Analysis/Accounting | 9/21/2007 | Atkins, M | 1 8 | Preparation and analysis of information supporting insider claims |
| Claims Analysis/Accounting | 9/21/2007 | Atkins, M | 0 4 | Responding to and researching questions from accounts payable |
| Claims Analysis/Accounting | 9/21/2007 | Atkins, M | 0 3 | Discussion w/ M Fisher (AMS) re: PGW post-petition AR collections and offsets |
| Claims Analysis/Accounting | 9/21/2007 | Atkins, M | 1 6 | Analysis of claims in preparation for omnibus objections |
| Claims Analysis/Accounting | 9/21/2007 | Atkins, M | 2 5 | Preparation of exhibits to claims objections |
| Claims Analysis/Accounting | 9/21/2007 | Seli, G | 1 9 | Analysis of landlord lease rejection claims and preparation of detailed rejection damage calculations |
| Claims Analysis/Accounting | 9/24/2007 | Atkins, M | 0 8 | Preparation of tax return information for review by counsel to support claims objections |
| Claims Analysis/Accounting | 9/24/2007 | Atkins, M | 1 6 | Preparation of information to provide publishers w/ data regarding potential returns from B&T settlement inventory |
| Claims Analysis/Accounting | 9/24/2007 | Atkins, M | 2 9 | Cross referencing objection exhibits in order to reference multiple objections |
| Claims Analysis/Accounting | 9/24/2007 | Atkins, M | 1 7 | Review of omnibus objection to ensure accuracy |
| Claims Analysis/Accounting | 9/24/2007 | Atkins, M | 2 4 | Preparing and finalizing claims objection exhibits |
| Claims Analysis/Accounting | 9/25/2007 | Atkins, M | 2 6 | Analysis of PGW claims to isolate highest priority claims for reconciliation and review |
| Claims Analysis/Accounting | 9/25/2007 | Atkins, M | 1 7 | Analysis of claims register for additional matches between schedules and claims |
| Claims Analysis/Accounting | 9/25/2007 | Atkins, M | 2 2 | Updating claims register to reflect 4th and 5th omnibus objections |
| Claims Analysis/Accounting | 9/26/2007 | Atkins, M | 2 8 | Updating claims register to reflect 2nd and 3rd omnibus objections |
| Claims Analysis/Accounting | 9/26/2007 | Atkins, M | 2 4 | Analysis of claims register for additional matches between schedules and claims |
| Claims Analysis/Accounting | 9/26/2007 | Atkins, M | 2 5 | Finalizing 4th and 5th omnibus objections exhibits, motion and affidavit |
| Claims Analysis/Accounting | 9/27/2007 | Atkins, M | 0 5 | Claims reconciliation of admin claims based on AMS research |
| Claims Analysis/Accounting | 9/27/2007 | Atkins, M | 0 5 | Discussion w/ C Smith re: case status and hearings |

**Advanced Marketing Services, Inc.**
**Capstone Advisory Group, LLC**
**Detailed Time Description by Task Code**
For the Period 9/1/07 through 9/30/07

| Task | Date | Professional | Hours | Detailed Time Description |
|------|------|-------------|-------|---------------------------|
| Claims Analysis/Accounting | 9/27/2007 | Atkins, M | 0 3 | Discussion w/ M Fisher (AMS) re: PGW pre-petition AR credits and post-petition refunds |
| Claims Analysis/Accounting | 9/27/2007 | Atkins, M | 3 1 | Analysis of employee data for preparation of notices and objections to claims |
| Claims Analysis/Accounting | 9/27/2007 | Atkins, M | 0 8 | Review and analysis of deferred compensation participants and changed in value of claim |
| Claims Analysis/Accounting | 9/27/2007 | Atkins, M | 3 3 | Claims reconciliation of admin claims based on AMS research |
| Claims Analysis/Accounting | 9/28/2007 | Atkins, M | 1 8 | Claims reconciliation of admin claims based on AMS research |
| Claims Analysis/Accounting | 9/28/2007 | Atkins, M | 0 6 | Research of 503(b)(9) claim to respond to request from counsel |
| Claims Analysis/Accounting | 9/28/2007 | Atkins, M | 1 3 | Research of continued objections from 2nd and 3rd Omnibus Objection |
| Claims Analysis/Accounting | 9/28/2007 | Atkins, M | 2 2 | Preparation of claims for 6th and 7th omnibus objection |
| **Claims Analysis/Accounting Total** | | | **94.1** | |
| Court Filings/Motions | 9/25/2007 | Atkins, M | 2 8 | Review of claims objections in preparation for court hearing |
| Court Filings/Motions | 9/26/2007 | Atkins, M | 1 7 | Preparation for court hearing related to Perseus transaction, disclosure statement and plan |
| Court Filings/Motions | 9/26/2007 | Atkins, M | 1.6 | Attendance at court hearing |
| **Court Filings/Motions Total** | | | **6.1** | |
| Creditors Committee Matters | 9/19/2007 | Atkins, M | 1 2 | Conference call w/ Committee counsel and advisor and Debtor's advisors |
| Creditors Committee Matters | 9/19/2007 | Rohman, M | 1 5 | Prepared for and participated in call with debtors' professionals and UCC professionals |
| **Creditors Committee Matters Total** | | | **2.7** | |
| Disclosure Statement/Plan of Reorganization | 9/6/2007 | Rohman, M | 1 5 | Reviewed claims reconciliation in preparation for delivering to the Creditors' Committee |
| Disclosure Statement/Plan of Reorganization | 9/7/2007 | Rohman, M | 2 5 | Reviewed clash flow budget for disclosure statement |
| Disclosure Statement/Plan of Reorganization | 9/10/2007 | Atkins, M | 4 8 | Preparation and analysis to estimate AMS and PGW claims for disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/10/2007 | Atkins, M | 5 4 | Preparation and analysis to estimate AMS and PGW claims for disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/11/2007 | Atkins, M | 3 9 | Preparation and analysis to estimate AMS and PGW claims for disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/11/2007 | Atkins, M | 4 3 | Preparation and analysis to estimate AMS and PGW claims for disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/12/2007 | Atkins, M | 3 7 | Preparation and analysis to estimate AMS and PGW claims for disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/12/2007 | Atkins, M | 3 8 | Preparation and analysis to estimate AMS and PGW claims for disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/12/2007 | Rohman, M | 4 5 | Reviewed claims registers in preparation for discussions with the Creditors' Committee |
| Disclosure Statement/Plan of Reorganization | 9/13/2007 | Atkins, M | 2 5 | Preparation and analysis related to 4th and 5th Omnibus Objections |
| Disclosure Statement/Plan of Reorganization | 9/13/2007 | Rohman, M | 3 5 | Reviewed latest version of cash flows for AMS and PGW |
| Disclosure Statement/Plan of Reorganization | 9/14/2007 | Atkins, M | 2 5 | Preparing for meetings and discussions with Traxi related to claims estimation for disclosure statement |
| Disclosure Statement/Plan of Reorganization | 9/14/2007 | Atkins, M | 1 4 | Revising estimates based on discussions and feedback from committee and debtors advisors |
| Disclosure Statement/Plan of Reorganization | 9/14/2007 | Rohman, M | 2 5 | Reviewed cash flows and participated in discussions with UCC professionals regarding specific assumptions |

**Advanced Marketing Services, Inc.**
**Capstone Advisory Group, LLC**
**Detailed Time Description by Task Code**
For the Period 9/1/07 through 9/30/07

| Task | Date | Professional | Hours | Detailed Time Description |
|------|------|------|------|------|
| Disclosure Statement/Plan of Reorganization | 9/14/2007 | Rohman, M | 3 5 | Reviewed claims registers and participated in discussions with UCC professionals regarding specific assumptions |
| Disclosure Statement/Plan of Reorganization | 9/16/2007 | Atkins, M | 1 5 | Preparing for meetings and discussions with Traxi related to claims estimation for disclosure statement |
| Disclosure Statement/Plan of Reorganization | 9/17/2007 | Atkins, M | 0 5 | Discussion w/ Traxi re: PGW claims estimation |
| Disclosure Statement/Plan of Reorganization | 9/17/2007 | Atkins, M | 1 2 | Review of and comments on drafts of disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/17/2007 | Atkins, M | 0 8 | Analysis and estimation of tax claims for disclosure statement |
| Disclosure Statement/Plan of Reorganization | 9/17/2007 | Rohman, M | 3 5 | Reviewed and analyzed post confirmation cash flow schedules |
| Disclosure Statement/Plan of Reorganization | 9/18/2007 | Atkins, M | 2 8 | Review of and comments on drafts of disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/18/2007 | Atkins, M | 3 1 | Revisions of claims estimates and estimates by creditor class |
| Disclosure Statement/Plan of Reorganization | 9/18/2007 | Atkins, M | 3 4 | Revisions of claims estimates, estimates by creditor class, cash flow and recovery estimates |
| Disclosure Statement/Plan of Reorganization | 9/18/2007 | Atkins, M | 2 7 | Review of and comments on drafts of disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/18/2007 | Rohman, M | 5 0 | Prepared for and participated in call with debtors' professionals to discuss company cash flows and claims analysis |
| Disclosure Statement/Plan of Reorganization | 9/19/2007 | Atkins, M | 1 9 | Revisions of claims estimates, estimates by creditor class, cash flow and recovery estimates |
| Disclosure Statement/Plan of Reorganization | 9/19/2007 | Atkins, M | 2 1 | Review of and comments on drafts of disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/19/2007 | Rohman, M | 3 5 | Participated in various calls with professionals regarding company cash flows projections |
| Disclosure Statement/Plan of Reorganization | 9/20/2007 | Atkins, M | 2 0 | Researching and responding to questions regarding disclosure statement and plan |
| Disclosure Statement/Plan of Reorganization | 9/20/2007 | Rohman, M | 3 5 | Reviewed and discussed cash flow forecasts for the Plan and Disclosure Statement |
| Disclosure Statement/Plan of Reorganization | 9/21/2007 | Rohman, M | 2 0 | Reviewed cash flows for Plan and Disclosure Statements |
| Disclosure Statement/Plan of Reorganization | 9/24/2007 | Rohman, M | 2 5 | Reviewed submitted versions of Plan and Disclosure Statement |
| Disclosure Statement/Plan of Reorganization | 9/25/2007 | Atkins, M | 0 7 | Review of disclosure statement and plan and responding to counsel questions |
| Disclosure Statement/Plan of Reorganization | 9/28/2007 | Atkins, M | 1 3 | Review and comments on data provided by Epiq for voting purposes |
| **Disclosure Statement/Plan of Reorganization Total** | | | **94.3** | |
| Employment Applications/Fee Applications | 9/12/2007 | Atkins, M | 0 4 | Preparation of monthly fee application |
| Employment Applications/Fee Applications | 9/13/2007 | Atkins, M | 1 6 | Preparation of monthly and interim fee applications |
| **Employment Applications/Fee Applications Total** | | | **2 0** | |
| **Grand Total** | | | **214.2** | |

**Advanced Marketing Services, Inc.**
**Capstone Advisory Group, LLC**
**Expense Detail**
For the Period 9/1/07 through 9/30/07

| Type | Professional | Date | Detail | | Amount |
|---|---|---|---|---|---|
| Airfare/Train | Atkins, M | 9/26/2007 | Airfare between Los Angeles and Philadelphia for court hearing | $ | 499.79 |
| **Airfare/Train Total** | | | | $ | **499.79** |
| Hotel | Atkins, M | 9/26/2007 | Doubletree Hotel in Wilmington, DE (1 night) | $ | 229.90 |
| **Hotel Total** | | | | $ | **229.90** |
| Meals - Billable | Atkins, M | 9/25/2007 | Dinner w/ A Feldman (OMM) Discussed case issues and upcoming court hearing | $ | 120.00 |
| Meals - Billable | Atkins, M | 9/25/2007 | Lunch on flight from LAX to PHL | $ | 5.00 |
| Meals - Billable | Atkins, M | 9/26/2007 | Meal at PHL airport | $ | 9.84 |
| Meals - Billable | Atkins, M | 9/26/2007 | Meal on flight from PHL to LAX | $ | 5.00 |
| **Meals - Billable Total** | | | | $ | **139.84** |
| Parking/Tolls | Atkins, M | 9/26/2007 | Parking @ LAX 9/25 through 9/26 | $ | 47.86 |
| **Parking/Tolls Total** | | | | $ | **47.86** |
| Research-Billable | CAG Direct Expenses | 9/30/2007 | September Pacer Charges | $ | 1.04 |
| **Research-Billable Total** | | | | $ | **1.04** |
| Taxi | Atkins, M | 9/25/2007 | Car service to hotels from restaurant (A Feldman, OMM and M Atkins, CAG) | $ | 25.00 |
| Taxi | Atkins, M | 9/25/2007 | Gratuity for car service from PHL airport to hotel | $ | 5.00 |
| Taxi | Atkins, M | 9/26/2007 | Gratuity for car service from RLF office to PHL | $ | 3.00 |
| **Taxi Total** | | | | $ | **33.00** |
| Telecom Charges- Billable | CAG Direct Expenses | 9/30/2007 | Teleconferencing | $ | 496.60 |
| Telecom Charges- Billable | CAG Direct Expenses | 9/30/2007 | Telecommunications | $ | 330.72 |
| **Telecom Charges- Billable Total** | | | | $ | **827.32** |
| **Grand Total** | | | | $ | **1,778.75** |

**AMENDED NINTH MONTHLY APPLICATION OF CAPSTONE ADVISORY
GROUP, LLC, FINANCIAL ADVISORS TO THE DEBTORS,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
(FOR THE PERIOD FROM SEPTEMBER 1, 2007 THROUGH SEPTEMBER 30, 2007)**

**ATTACHMENT C**



**CAPSTONE**
ADVISORY GROUP, LLC

1800 Century Park East
Suite 600
Los Angeles, CA 90067

Telephone: (310) 229-5732
Facsimile: (310) 229-5739

www.CapstoneAG.com

July 6, 2006

Mr. Gary M. Rautenstrauch
President & Chief Executive Officer
Advanced Marketing Services, Inc.
5880 Oberlin Drive
San Diego, California 92121

Dear Gary;

This letter confirms the engagement of Capstone Advisory Group, LLC ("Capstone") by Advanced Marketing Services, Inc. (the "Company") to provide consulting services in connection with its current sale / refinancing efforts. In addition to Capstone's current engagement to provide consulting services to O'Melveny & Myers, LLP under our letter dated May 3, 2006, the Company has requested additional and specific services from Capstone and Mr. Mark Rohman, a Member of Capstone.

The Company has requested that Mr. Rohman assume the consulting role of Recapitalization Consultant ("RC"). Under this role, it will be Mr. Rohman's responsibility to assist the Company as it works with its investment banker ("Jefferies") to market or refinance the Company. In this capacity, Mr. Rohman will perform the following tasks:

- act as a liaison between the Company and Jefferies

- assist in providing data and information requested by Jefferies in its efforts to market and refinance the Company

- assist Jefferies in its efforts to market or refinance the Company

- focus Jefferies on identifying and executing an alternative that best meets the objectives of the Board of Directors

- provide the Board with periodic updates as to the status of refinancing efforts

- perform such other tasks as may be requested by the Company from time to time

In his capacity as RC, Mr. Rohman will have the authorization to utilize Capstone staff to assist him with his efforts.

In addition to these specific services, we understand that Mr. Rohman will participate, at your request and to the extent appropriate, in meetings and discussions with the Board, the Company and its lenders, other creditor constituencies and with each of their respective professionals.

We understand that Capstone will act at the direction of and under the supervision of Gary Rautenstrauch, President & Chief Executive Officer of the Company. We will submit our evaluations and analyses to the Company pursuant to this engagement in periodic oral or written reports. We understand that work performed by us as part of this engagement, including, without limitation, any reports we may prepare, constitute confidential communications. We understand that any document prepared by us is prepared for the Company and is the property of the Company.

In order for us to perform our services, it will be necessary for our personnel to have access to certain books, records and reports of the Company, and have discussions with its personnel. Limited access may restrict our ability to perform our services as previously described in this letter. Accordingly, we understand that the Company has agreed to cooperate with our personnel, and to make available its personnel and any books, records and other sources from which data can be obtained.

We will perform our services in a manner that permits the business operations of the Company to proceed in an orderly manner, subject to the requirements of this engagement; our personnel may need to be on site to review data located at the offices of the Company and to discuss matters with its personnel.

Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objectives of our engagement. Because of the time and scope limitations implicit in our engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. We understand that we are not being requested to perform an audit nor to apply generally accepted auditing standards or procedures. We understand that we are entitled, in general, to rely on the accuracy and validity of the data disclosed to us or supplied to us by employees and representatives of the Company. We will not, nor are we under any obligation to; update data submitted to us or review any other areas unless you specifically request us to do so.

Our work will be performed on a "level-of-effort" basis; that is, the circumstances of our engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.

We understand that the Company has agreed to treat confidentially any information received from Capstone, whether orally or in writing. Such information shall not be disclosed to third parties unless: (a) the information sought is required to be disclosed by an order binding on the Company and/or Capstone, issued by a court having competent jurisdiction over the Company and/or Capstone (unless such order specifies that the information to be disclosed is to be placed under seal); or (b) the information sought is required to be disclosed by compulsory process issued by federal or state governmental agency; or (c) such information is otherwise publicly available or (d) such information is shared with the Board and the Company pursuant to legal services rendered to the Board; or (e) the Company determines in good faith that such

information should be disclosed to Deloitte & Touche LLP, the Company's independent auditors; or (f) the Company is advised by legal counsel that such information otherwise should be disclosed.

We agree that all information, not publicly available, which is received from the Company in connection with this engagement, will be treated confidentially by Capstone, except as required by process of law or as authorized by you.

We recognize that our exclusive client in this agreement is the Company and we will consider all work done with respect to this engagement to be confidential.

Our hourly fees will be based on the actual hours charged at our standard hourly rates, which are in effect when the services are rendered; our rates are revised annually. We will also be reimbursed for our reasonable out-of-pocket expenses including, but not limited to, costs of reproduction, typing, research, communications, computer usage, our legal counsel, any applicable sales or excise taxes and other direct expenses. Our current hourly rates are as follows:

| | |
|---|---|
| Executive Directors | $ 505 - $ 575 |
| Staff | $ 275 - $ 450 |
| Support | $ 90 - $ 180 |

We will submit to you and the Company bi-weekly invoices for all services rendered and expenses incurred; our invoices are payable upon receipt.

In addition to the hourly fees, there will be a Success Fee awarded upon completion of a successful sale or refinancing of the Company. The Success Fee that will be awarded to Capstone will be equal to 30% of any Sale Fee and 30% of any Financing Fee (as those terms are defined in the engagement letter dated July 19, 2006 between the Company and Jefferies & Co., Inc. ("the Jefferies Engagement Letter")) paid by the Company to Jefferies & Co., Inc. pursuant to the terms of the Jefferies Engagement Letter. The Company and Capstone agree that the following are excluded from the Success Fee: (i) any Fairness Opinion Fee paid by the Company to Jefferies; and (ii) any Sale Fee or Financing Fee paid by the Company to Jefferies in connection with a Transaction (as those terms are defined in the Jefferies Engagement Letter) resulting from a definitive agreement that was entered into within nine months after the termination or expiration of Jefferies' engagement.

If access to any of the materials in our possession relating to this engagement is sought by a third party, we will promptly notify you of such action, tender to you our defense responding to such request and cooperate with you concerning our response thereto. In the event that we are subpoenaed as the result of any work performed for you in connection with this engagement, the Company agrees that it will compensate us for our time involved in responding to such a subpoena(s).

The Company agrees to indemnify and hold harmless Capstone against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, the costs, fees, expenses and disbursements, as and when incurred, of investigating, preparing or defending any action, suit, proceedings or investigation (whether or not in connection with proceedings or litigation in which Capstone is a party), directly or indirectly, caused by, relating to, based upon, arising out of or in connection with the engagement of Capstone or any services rendered pursuant to such engagement, unless there is a final non-

appealable order of a Court of competent jurisdiction, finding Capstone or any person or entity identified in the next sentence directly liable for gross negligence or willful misconduct. These indemnification provisions extend to the members, principals, employees, representatives, agents, counsel and affiliates of Capstone.

Capstone agrees that it hereby irrevocably and unconditionally (a) submits itself and its properties in any legal action or proceedings relating to the engagement of Capstone or any services rendered pursuant to such engagement, to the non-exclusive general jurisdiction of the Superior Court of the State of California, San Diego and the Courts of the United States of America for the Southern District of California, and appellate courts from any thereof; (b) consents that any such action or proceedings may be brought in such courts and waives any objection that it may now or hereafter have the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; (c) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to Capstone at its address set forth above or at such other address of which the Company shall have been notified pursuant hereto; and (d) agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction

It is understood that if any of the employees of Capstone are required to testify at any administrative or judicial proceedings relating to this matter in proceedings other than those brought by the government, Capstone will be compensated by the Company at our regular hourly rates, in effect at the time, and reimbursed for reasonable out-of-pocket expenses (including counsel fees).

Pursuant to Capstone's document retention policy, in general, short-term documents will be destroyed when no longer relevant to the related matter (such as when a draft report has been superseded or if the information is available publicly or from the Company). Ongoing client files are normally retained, in either hard copy or electronic format, for six (6) months following the conclusion of our engagement, after which time you will be provided written notice that the file will be scheduled for destruction. At your request, we are prepared to deliver our documents to your counsel at the conclusion of this engagement. You may obtain copies of all or any portion of your file at any time prior to its destruction.

This engagement shall terminate 12 months from the date of this agreement, unless extended in writing by the Company and by Capstone. We understand that you may terminate this agreement on three days written notice. If you terminate this engagement, you will not be responsible for fees that accrued after the date of termination, other than those fees and expenses related to any requirement to testify at any administrative or judicial proceeding related to this matter (other than any proceeding brought by the government) or perform related investigation as specified above.

It is our intention to work closely with you and to discuss our engagement regularly. This should facilitate our progress and serve to confirm or modify the scope of our engagement on an ongoing basis.

We look forward to working with you on this matter. Please sign and return a copy of this engagement letter signifying your agreement with the terms and provisions herein. If you have any questions, please call Mark Rohman at 310-229-5732.

Very truly yours,

*Wade C. Koluran*, Member

Capstone Advisory Group, LLC

Agreed by:

Gary M. Rautenstrauch
President & Chief Executive Officer
Advanced Marketing Services, Inc.