# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | CHAPTER 11 |
| ADVANCED MARKETING SERVICES, INC., *ET AL.,*[1] | CASE NO. 06-11480 (CSS) |
| | JOINTLY ADMINISTERED |
| DEBTORS. | |

## THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**O'MELVENY & MYERS LLP**
275 Battery Street
San Francisco, CA 94111
Suzzanne S. Uhland
Austin K. Barron
Alexandra B. Feldman
(415) 984-8700

-and-

**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Mark D. Collins
Paul N. Heath
(302) 651-7700

Attorneys for the Debtors

**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, NJ 07068
Bruce Buechler
Bruce Nathan
(973) 597-2500

-and-

**MORRIS, NICHOLS, ARSHT & TUNNELL, LLP**
1201 Market Street
P.O. Box 1347
Wilmington, DE 19899
Eric D. Schwartz
Thomas Driscoll, III
(302) 658-9200

Attorneys for the Official Committee of Unsecured Creditors

---

[1] The Debtors are the following entities: Advanced Marketing Services, Inc., a Delaware corporation; Publishers Group Incorporated, a California corporation; and Publishers Group West Incorporated, a California corporation.

## INTRODUCTION

Advanced Marketing Services, Inc., Publishers Group Incorporated and Publishers Group West Incorporated, debtors and debtors-in-possession in the above-captioned chapter 11 cases (each individually a "Debtor," and collectively, the "Debtors"), and the Official Committee of Unsecured Creditors of the Debtors (the "Committee" and, together with the Debtors, the "Plan Proponents") propose this Third Amended Joint Chapter 11 Plan of Liquidation (the "Plan") pursuant to the provisions of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

### A. Defined Terms

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of this Plan, the following terms (which appear in this Plan in capitalized forms) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

"**20 Day Administrative Bar Date**" shall be the last date for Creditors to file 20 Day Administrative Claims. The 20 Day Administrative Bar Date was July 2, 2007.

"**20 Day Administrative Claim**" shall mean a Claim arising under Bankruptcy Code § 503(b)(9) on account of any Debtor's receipt of goods in the ordinary course of business within the 20 days preceding the Petition Date and with respect to which a Proof of Claim was filed on or prior to the 20 Day Administrative Bar Date.

"**510(b) Claim**" shall mean any Claim (i) arising from rescission of a purchase or sale of a security of any Debtor or any affiliate of a Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Bankruptcy Code § 502 on account of such Claims and (ii) which, if asserted against AMS,

would be of the same priority as Interests of AMS in Class 5 pursuant to Bankruptcy Code § 510(b).

**"ACH"** shall mean an automated clearing house transfer from a domestic bank.

**"Administrative Budget"** shall mean (i) the initial budget for the 6-month period following the Effective Date, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of Reorganized AMS, together any amendments or modifications thereto, as prepared by the Plan Administrator and approved by the Post-Confirmation Committee pursuant to Article IV.G of this Plan, and (ii) any subsequent budget for a 6-month period, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of Reorganized AMS, together any amendments or modifications thereto, as prepared by the Plan Administrator and approved by the Post-Confirmation Committee pursuant to Article IV.G of this Plan.

**"Administrative Claim"** shall mean any Claim for costs and expenses of administration of these cases with priority under Bankruptcy Code § 507(a)(1), including, without limitation, costs and expenses allowed under Bankruptcy Code § 503(b), the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Professional Fee Claims and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930.

**"Administrative Expense Request"** shall mean a request for payment of an Administrative Claim that is to be filed with the Bankruptcy Court and served on counsel for the Debtors, if before the Effective Date, or for the Plan Administrator, if after the Effective Date, and in any event by no later than the Second Administrative Expense Request Deadline.

**"Allowed Claim"** or **"Allowed Interest"** shall mean, respectively, a Claim or Interest: (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent or unliquidated and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the relevant Bar Date and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made; or (iii) that has been allowed by a Final Order. An Allowed Claim shall not include interest on the amount of any Claim

except with respect to an Allowed Secured Claim as permitted by Bankruptcy Code § 506(b) and as specifically provided in this Plan or by Final Order of the Bankruptcy Court. In accordance with Bankruptcy Code § 502(d), a Claim held by any Person from which property is recoverable and that is subject to any Cause of Action shall not be an Allowed Claim until such time as the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached.

"**Allowed [Class Designation, Administrative, Priority Tax, Reclamation, Priority, Secured, Unsecured or 510(b)] Claim**" or "**Allowed [Class Designation] Interest**" shall mean an Allowed Claim or Allowed Interest, as the case may be, of the specified Class or an Allowed Claim that is an Administrative Claim, Priority Tax Claim, Reclamation Claim Priority Claim, Secured Claim, Unsecured Claim or 510(b) Claim, as the case may be.

"**AMS**" shall mean Debtor Advanced Marketing Services, Inc., a Delaware corporation.

"**Assets**" shall mean all assets of each of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Bankruptcy Code § 541, Cash, Causes of Action, including Avoidance Actions, rights, interests and property, real and personal, tangible and intangible.

"**Assumption Objection Deadline**" shall mean the date four (4) days prior to the Confirmation Hearing.

"**Assumption Schedule**" shall mean the schedule of Executory Contracts (not previously assumed in the Chapter 11 Cases) to be assumed by the Debtors as of the Effective Date pursuant to this Plan, together with the amount of cure payments, if any, to be paid by the Plan Administrator in accordance with Bankruptcy Code § 365(b)(1).

"**Avoidance Action(s)**" shall mean all claims and Causes of Action arising under chapter 5 of the Bankruptcy Code.

"**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the Petition Date.

**"Bankruptcy Court"** shall mean the United States District Court for the District of Delaware with jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of Delaware, or any court having competent jurisdiction to enter the Confirmation Order.

**"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective in accordance with the provisions of 28 U.S.C. § 2075, as the same shall from time to time be amended.

**"Bar Date"** shall mean July 2, 2007, and such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim must have filed a Proof of Claim or be forever barred from asserting such Claim.

**"Bar Date Order"** shall mean that certain order of the Bankruptcy Court dated as of April 26, 2007, establishing the July 2, 2007 Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

**"Business Day"** shall mean a day (i) other than Saturday, Sunday, a legal holiday or other day on which commercial banks in the State of Delaware are authorized or required by law to close and (ii) as further defined in Bankruptcy Rule 9006(a).

**"Cash"** shall mean cash and cash equivalents in certified or immediately available funds, including but not limited to bank deposits, checks and similar items.

**"Causes of Action"** shall mean all claims, causes of action, third-party claims, counterclaims and crossclaims (including but not limited to any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that may be pending on the Effective Date or instituted after the Effective Date against any entity based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, including Avoidance Actions.

**"Chapter 11 Cases"** shall mean the above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court and jointly administered with one another under Case No. 06-11480 (CSS).

**"Claims"** shall mean any claim(s) against the Debtors as such term is defined in Bankruptcy Code § 101(5), including without limitation (i) any right to payment from the Debtors whether or not such right is reduced to a judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, and (ii) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to a judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, arising before, on or after the Petition Date through the Effective Date.

**"Class"** shall mean each class of Holders of Claims or Interests specified in Article II.A of this Plan.

**"Committee"** shall mean the Official Committee of Unsecured Creditors of the Debtors appointed by the United States Trustee in the Chapter 11 Cases.

**"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

**"Confirmation Hearing"** shall mean the hearing at which the Bankruptcy Court considers confirmation of this Plan.

**"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan, pursuant to Bankruptcy Code § 1129, and approving the transactions contemplated herein.

**"Creditor"** shall mean any Person that is a Holder of a Claim against any Debtor that arose, or is deemed to have arisen, on or before the Petition Date, including, without limitation, Claims of the kind specified in Bankruptcy Code §§ 502(b), 502(h) or 502(i).

**"Debtors"** shall mean, collectively, AMS, PGI and PGW.

**"Deferred Compensation Plan"** shall mean AMS's 2005 Deferred Compensation Plan.

**"Deferred Compensation Trust"** shall mean the Grantor Trust established pursuant to that certain Trust Agreement dated as of July 8, 2003, by and among AMS, PGW and Union Bank of California, N.A., as trustee.

**"Disallowed Claim"** shall mean a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iii) is not Scheduled and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors and the Holder thereof or (v) has been withdrawn by the Holder thereof.

**"Disbursing Agent"** shall mean the Plan Administrator, unless another Person is designated to be the Disbursing Agent by the Plan Administrator.

**"Disclosure Statement"** shall mean the Disclosure Statement dated August 24, 2007 related to this Plan, and all exhibits thereto, filed pursuant to Bankruptcy Code § 1125 and approved by the Bankruptcy Court.

**"Disputed Claim"** shall mean a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, including without limitation all Claims that (i) have not been Scheduled by the Debtors or have been Scheduled as unknown, contingent, unliquidated, disputed or at zero, whether or not such Claims are the subject of a Proof of Claim in the Bankruptcy Court, (ii) are the subject of a Proof of Claim that differs in nature, amount or priority from the Schedules or (iii) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court;

provided however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

"**Distributable Cash**" shall mean all remaining available Cash after (i) payment of the Prior Claims and (ii) retention of amounts needed to pay or reserve for anticipated amounts of Post-Confirmation Expenses and Disputed Claims.

"**Effective Date**" shall mean the day after the Confirmation Order has become a Final Order.

"**Estates**" shall mean the estates of the Debtors created by Bankruptcy Code § 541.

"**Executory Contract**" shall mean any executory contract or unexpired lease subject to Bankruptcy Code § 365, between any Debtor and any other Person.

"**Face Amount**" shall mean when used in reference (i) to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law and (ii) to an Allowed Claim, the allowed amount of such Claim.

"**Final Decree**" shall mean the decree contemplated under Bankruptcy Rule 3022.

"**Final Order**" shall mean an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Cases that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing or, if an appeal, reargument, petition for certiorari, or rehearing thereof has been pursued or granted then such an appeal, reargument, petition for certiorari, or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired. Notwithstanding, and in lieu of the

foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

**"Holder"** shall mean the owner or holder of any Claim or Interest.

**"Impaired"** shall have the meaning set forth in Bankruptcy Code § 1124.

**"Interest"** shall mean, with respect to any Debtor, any "equity interest", as such term is defined in Bankruptcy Code § 101(16). Interests shall also include, without limitation, all stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any shares of stock in the Debtors.

**"Lien"** shall mean any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt, or litigation.

**"Merger"** shall mean the merger of PGI and PGW with and into AMS and the amendment of AMS's certificate of incorporation to change its name to Reorganized AMS.

**"Person"** shall mean any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

**"Petition Date"** shall mean December 29, 2006, the date the Debtors commenced the Chapter 11 Cases.

**"PGI"** shall mean Debtor Publishers Group Incorporated, a California corporation.

**"PGW"** shall mean Debtor Publishers Group West Incorporated, a California corporation.

**"Plan"** shall mean this Third Amended Joint Chapter 11 Plan of Liquidation (as the same may be modified or amended by the Plan Proponents in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan) and any exhibits hereto and any documents incorporated herein by reference.

**"Plan Administrator"** shall mean that individual, appointed by the Plan Proponents pursuant to Article IV.C of this Plan, in his or her capacity as the chief executive officer and sole director of Reorganized AMS or any of his or her successors.

**"Plan Proponents"** shall mean, collectively, the Debtors and the Committee.

**"Post-Confirmation Committee"** shall mean the post-confirmation committee formed on the Effective Date upon the dissolution of the Committee and composed of the following members: Random House, Inc., Hachette Book Group USA, Inc., Harper Collins Publishers, Penguin Group, and Workman Publishing Co.

**"Post-Confirmation Expense"** shall mean any fees, costs and expenses (including attorneys' fees, the fees of other professionals and any taxes imposed on Reorganized AMS or in respect of its Assets) necessary to complete the liquidation and winding up of the Debtors, their Estates and Reorganized AMS after the Effective Date.

**"Prior Claims"** shall mean, collectively, (i) Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed Secured Claims against all Debtors and (ii) Allowed Unsecured Claims against PGI and PGW.

**"Priority Claim"** shall mean a Claim entitled to priority pursuant to Bankruptcy Code § 507 that is not an Administrative Claim or a Priority Tax Claim.

**"Priority Tax Claim"** shall mean a Claim of the kind specified in Bankruptcy Code § 507(a)(8).

**"Professional"** shall mean a Person (i) employed by the Debtors and/or the Committee pursuant to a Final Order in accordance with Bankruptcy Code §§ 327 and 1103 and to be compensated for services rendered prior to the Effective Date pursuant to Bankruptcy Code §§ 327, 328, 329, 330, and 331, or (ii) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b)(4) by a Final Order. This definition excludes professionals that may be selected and employed by the Plan Administrator, Reorganized AMS or the Post-Confirmation Committee on and after the Effective Date.

**"Professional Fee Claim"** shall mean all fees and expenses claimed by Professionals retained by the Debtors and/or the Committee which remain unpaid as of the Effective Date. This term excludes professional fees and expenses incurred by any professionals that may be selected and employed by the Plan Administrator, Reorganized AMS or the Post-Confirmation Committee on and after the Effective Date.

**"Proof of Claim"** shall mean a proof of claim filed in the Chapter 11 Cases pursuant to Bankruptcy Code § 501 and/or any order of the Bankruptcy Court, together with supporting documents.

**"Pro Rata"** shall mean the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

**"Protected Party"** shall mean any of the Debtors, the Plan Administrator, the Estates, Reorganized AMS, the Committee, the Post-Confirmation Committee and their respective officers, directors, employees, members, shareholders, advisors, attorneys, representatives, professionals and other agents.

**"Reclamation Claim"** shall mean a Claim related to the right of a Creditor to reclaim goods sold to, and received by, any Debtor in the ordinary course of business as set forth in Bankruptcy Code § 546(c) and excluding any 20 Day Administrative Claim.

**"Reorganized AMS"** shall mean the Delaware corporation that is the surviving entity following consummation of the Merger.

**"Scheduled"**, with respect to any Claim, shall mean listed on the Schedules.

**"Schedules"** shall mean the Statements of Financial Affairs and Schedules of Assets and Liabilities filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such Statements of Financial Affairs and Schedules of Assets and Liabilities have been or may be amended or supplemented from time to time.

**"Second Administrative Expense Request Deadline"** shall mean the date set as the deadline for filing Administrative Expense Requests for Administrative Claims (excluding Professional Fee Claims) that are not subject to the Bar Date Order, which shall be thirty (30) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

**"Secured Claim"** shall mean, pursuant to Bankruptcy Code § 506, that portion of a Claim that is (i) secured by a valid, perfected and enforceable security interest, Lien, mortgage or other encumbrance, which is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor(s) in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date; or (ii) Allowed as such pursuant to the terms of this Plan. The defined term "Secured Claim" includes any Claim that is (i) subject to an offset right under applicable law and (ii) any secured claim against the Debtors pursuant to Bankruptcy Code §§ 506(a) and 553.

**"Unsecured Claim"** shall mean any claim that is not an Administrative Claim, Secured Claim, Priority Claim, Priority Tax Claim or 510(b) Claim.

**B.      Other Terms**

The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section or clause contained in this Plan. A reference to an "Article" refers to an Article, or referenced portion thereof, of this Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or by the Bankruptcy Code. The rules of construction set forth in Bankruptcy Code § 102 shall apply in constructing this Plan.

**C.      Exhibits**

All Exhibits to this Plan are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

# ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS

### A.   Classification

The classification of Claims (except for Administrative Claims and Priority Tax Claims) and Interests listed below is for all purposes, including without limitation voting, confirmation and distributions under this Plan and under Bankruptcy Code §§ 1122 and 1123(a)(1).  A Claim shall be deemed classified in a particular Class only to the extent such Claim satisfies the definition of such Class and shall be deemed classified in a different Class to the extent any remainder or other portion of such Claim satisfies the definition of such different Class.  A Claim is in a particular Class only to the extent such Claim is an Allowed Claim in such Class and has not been paid or otherwise settled before the Effective Date.  **This Plan does not effect a substantive consolidation of the Debtors.**

The classification of Claims pursuant to this Plan is as follows:

| CLASS | STATUS | VOTING RIGHTS |
|---|---|---|
| Class 1:  Priority Claims Against AMS | Not Impaired | Not Entitled to Vote |
| Class 2:  Secured Claims Against AMS | Not Impaired | Not Entitled to Vote |
| Class 3: Unsecured Claims Against AMS | Impaired | Entitled to Vote |
| Class 4:  510(b) Claims Against AMS | Impaired | Not Entitled to Vote |
| Class 5:  Interests of AMS | Impaired | Not Entitled to Vote |
| Class 6:  Priority Claims Against PGI | Not Impaired | Not Entitled to Vote |
| Class 7:  Secured Claims Against PGI | Not Impaired | Not Entitled to Vote |
| Class 8:  Unsecured Claims Against PGI | Impaired | Entitled to Vote |
| Class 9:  Interests of PGI | Impaired | Entitled to Vote |
| Class 10: Priority Claims Against PGW | Not Impaired | Not Entitled to Vote |
| Class 11:  Secured Claims Against PGW | Not Impaired | Not Entitled to Vote |
| Class 12:  Unsecured Claims Against PGW | Impaired | Entitled to Vote |

| CLASS | STATUS | VOTING RIGHTS |
|---|---|---|
| Class 13: Interests of PGW | Impaired | Entitled to Vote |

**B.      Unclassified Claims:  Administrative Claims and Priority Tax Claims**

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article II.B.

### 1.      **Administrative Claims**

#### a.      **Non-Professional Fee Claims**

The Plan Administrator shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims, Reclamation Claims and 20 Day Administrative Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after such Administrative Claim becomes an Allowed Claim.  Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Plan Administrator.  Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid as of the Effective Date shall be paid by the Plan Administrator no later than thirty (30) days after the Effective Date or when due in the ordinary course.

#### b.      **Professional Fee Claims**

The Plan Administrator shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from the Debtors' Estates pursuant to Bankruptcy Code §§ 503(b)(2) – (b)(6), in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses

during the course of the Chapter 11 Cases, and after application of any retainer received by the Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for Reorganized AMS and the Plan Administrator at the addresses listed in Article IX.N of this Plan and on the Office of the United States Trustee so that it is received no later than forty-five (45) days after the Effective Date or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, Reorganized AMS, the Plan Administrator, and their successors, their assigns or their Assets. Allowed Professional Fee Claims must be paid in full or reserved for in Cash to pay Professional Fee Claims pending allowance by the Bankruptcy Court prior to any payment to Holders of Allowed Claims in Class 3 (Unsecured Claims against AMS).

c.     **20 Day Administrative Claims Against PGW**

The Plan Administrator shall pay each Holder of an Allowed 20 Day Administrative Claim against PGW the full amount of such Allowed 20 Day Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after such 20 Day Administrative Claim against PGW becomes an Allowed Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed 20 Day Administrative Claim against PGW may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Plan Administrator.

d.     **20 Day Administrative Claims Against AMS**

The Plan Administrator shall pay each Holder of an Allowed 20 Day Administrative Claim against AMS the full amount of such Allowed 20 Day Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after such 20 Day Administrative Claim against AMS becomes an Allowed Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed 20 Day Administrative

Claim against AMS may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Plan Administrator.

> **e.** **Administrative Claims and Second Administrative Expense Request Deadline**

Each Holder of an Administrative Claim must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than (i) July 2, 2007 for any Claims covered by the Bar Date Order or (ii) the Second Administrative Expense Request Deadline for all other Administrative Claims that are not subject to the Bar Date Order; provided, however, that any such Administrative Expense Request need not be filed with a hearing date. Nothing herein extends a Bar Date established in the Bar Date Order. The Plan Administrator shall pay each Holder of an Allowed Administrative Claim against any Debtor the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after such Administrative Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim against any Debtor may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Plan Administrator.

> **2.** **Priority Tax Claims Against PGW**

The Plan Administrator shall pay, at the Plan Administrator's discretion, each Holder of an Allowed Priority Tax Claim of PGW in full in Cash as soon as practicable after the Effective Date or within thirty (30) days after such Priority Tax Claim becomes an Allowed Claim. All Allowed Priority Tax Claims of PGW which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. The Plan Administrator can prepay any Allowed Priority Tax Claim of PGW at any time after the Effective Date without any penalty or charge.

Holders of Allowed Priority Tax Claims against PGW shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with

such Claims. Any such Claim, or demand for any such penalty, shall be deemed disallowed by confirmation of this Plan.

### 3. **Priority Tax Claims Against AMS**

The Plan Administrator shall pay, at the Plan Administrator's discretion, each Holder of an Allowed Priority Tax Claims against AMS either (i) in full in Cash as soon as practicable after the Effective Date or within thirty (30) days after such Priority Tax Claim becomes an Allowed Claim or (ii) over a period ending not later than five (5) years after the Petition Date, with deferred Cash payments on a quarterly basis in an aggregate amount equal to any such Allowed Priority Tax Claim against AMS, together with interest thereon (if and so required) at the legal rate required for such Claim in chapter 11 cases. All Allowed Priority Tax Claims against AMS which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. The Plan Administrator can prepay any Allowed Priority Tax Claim against AMS at any time after the Effective Date without any penalty or charge.

Holders of Allowed Priority Tax Claims against AMS will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of this Plan.

### 4. **Reclamation Claims Against PGW**

The Plan Administrator shall pay each Holder of an Allowed Reclamation Claim against PGW in full, without interest, in Cash after deductions for returns of inventory, as soon as practicable after the Effective Date or within thirty (30) days after such Reclamation Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed Reclamation Claim against PGW may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Plan Administrator.

5.      **Reclamation Claims Against AMS**

The Plan Administrator shall pay each Holder of an Allowed Reclamation Claim against AMS in full, without interest, in Cash after deductions for returns of inventory, as soon as practicable after the Effective Date or within thirty (30) days after such Reclamation Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed Reclamation Claim against AMS may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Plan Administrator. With respect to Allowed Reclamation Claims against AMS and Allowed 20 Day Administrative Claims against AMS allowed as Administrative Claims pursuant to that certain Order Pursuant to Sections 502 and 503 of the Bankruptcy Code and Bankruptcy Rule 9019 Allowing Certain Reclamation Claims as Administrative Expense Claims and Granting Related Relief (Docket No. 1315) (the "Reclamation Order"), each such claim may be reduced dollar for dollar (i.e., at 100% of cost) for returns of goods up to, but not exceeding, the amount set forth on Exhibit A to the Reclamation Order under "Current Amount" which reflects the goods in the possession of the Debtors at or about the time of the report for each such claim.

C.      **Classes of Claims and Interests: Classification, Treatment and Voting Rights**

Holders of Claims and Interests are divided into Classes and treated as follows:

1.      **"Class 1" – Priority Claims Against AMS – *Not Impaired***

a.      **Classification**

Class 1 consists of all Allowed Priority Claims against AMS.

b.      **Treatment**

The Plan Administrator shall pay each Holder of an Allowed Class 1 Claim, in relative order of priority pursuant to Bankruptcy Code § 507, in full, in Cash, without interest, on the later of thirty (30) days after (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

SF1:693940.6                                    -17-

#### c.      Voting

Class 1 is not Impaired.  Holders of Claims in Class 1 are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f).  Therefore, Holders of Claims in Class 1 are not entitled to vote to accept or reject this Plan.

### 2.      "Class 2" – Secured Claims Against AMS – *Not Impaired*

#### a.      Classification

Class 2 consists of all Secured Claims against AMS.

#### b.      Treatment

Each Holder of an Allowed Class 2 Claim shall, at the option of the Plan Administrator, either (i) have such Claim reinstated and rendered unimpaired in accordance with Bankruptcy Code § 1124(2), notwithstanding any contractual provision or applicable nonbankruptcy law that entitles such Holder to demand or to receive payment of such Claim prior to the stated maturity of same from and after the occurrence of a default, (ii) receive Cash in an amount equal to such Claim, in full and complete satisfaction of such Claim, on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable or (iii) receive the collateral securing its Claim in full and complete satisfaction of such Claim on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

#### c.      Voting

Class 2 is not Impaired.  Holders of Allowed Class 2 Claims are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f).  Therefore, Holders of Claims in Class 2 are not entitled to vote to accept or reject this Plan.

### 3.      "Class 3" – Unsecured Claims Against AMS – *Impaired*

#### a.      Classification

Class 3 consists of all Unsecured Claims against AMS.

b.    **Treatment**

The Plan Administrator shall distribute to each Holder of an Allowed Class 3 Claim a Pro Rata share of Distributable Cash.

c.    **Voting**

Class 3 is Impaired. Therefore, Holders of Allowed Class 3 Claims are entitled to vote to accept or reject this Plan.

4.    **"Class 4" – 510(b) Claims Against AMS – *Impaired***

a.    **Classification**

Class 4 consists of all 510(b) Claims against AMS.

b.    **Treatment**

Holders of Class 4 Claims shall receive no distribution on account of their Claims.

c.    **Voting**

Class 4 is Impaired and will receive no distribution under this Plan. Holders of Class 4 Claims are conclusively deemed to have rejected this Plan pursuant to Bankruptcy Code § 1126(g). Therefore, Holders of Claims in Class 4 are not entitled to vote to accept or reject this Plan.

5.    **"Class 5" – Interests of AMS – *Impaired***

a.    **Classification**

Class 5 consists of all Interests in AMS.

b.    **Treatment**

Holders of Interests in Class 5 shall receive no distribution or dividend on account of such Interests. On the Effective Date, all Interests in Class 5 shall be deemed canceled, null and void, and of no force and effect.

c.    **Voting**

Class 5 is Impaired and will receive no distribution under this Plan. Holders of Interests in Class 5 are conclusively deemed to have rejected this Plan pursuant to Bankruptcy

Code § 1126(g). Therefore, Holders of Interests in Class 5 are not entitled to vote to accept or reject this Plan.

6.  **"Class 6" – Priority Claims Against PGI –** *Not Impaired*

    a.    **Classification**

Class 6 consists of all Allowed Priority Claims against PGI.

    b.    **Treatment**

The Plan Administrator shall pay each Holder of an Allowed Class 6 Claim, in relative order of priority pursuant to Bankruptcy Code § 507, in full, in Cash, without interest, on the later of thirty (30) days after (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

    c.    **Voting**

Class 6 is not Impaired. Holders of Claims in Class 6 are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f). Therefore, Holders of Claims in Class 6 are not entitled to vote to accept or reject this Plan.

7.  **"Class 7" – Secured Claims Against PGI –** *Not Impaired*

    a.    **Classification**

Class 7 consists of all Secured Claims against PGI.

    b.    **Treatment**

Each Holder of an Allowed Class 7 Claim shall, at the option of the Plan Administrator, either (i) have such Claim reinstated and rendered unimpaired in accordance with Bankruptcy Code § 1124(2), notwithstanding any contractual provision or applicable non-bankruptcy law that entitles such Holder to demand or to receive payment of such Claim prior to its stated maturity from and after the occurrence of a default, (ii) receive Cash in an amount equal to such Claim, in full and complete satisfaction of such Claim, on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable or (iii) receive the collateral securing its Claim in full and complete

satisfaction of such Claim on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

**c.**     **Voting**

Class 7 is not Impaired. Holders of Claims in Class 7 are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f). Therefore, Holders of Claims in Class 7 are not entitled to vote to accept or reject this Plan.

**8.**     **"Class 8" – Unsecured Claims Against PGI –** *Impaired*

**a.**     **Classification**

Class 8 consists of all Allowed Unsecured Claims against PGI.

**b.**     **Treatment**

The Plan Administrator shall pay each Holder of an Allowed Class 8 Claim in full, without interest, in Cash on the later of thirty (30) days after (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

**c.**     **Voting**

Class 8 is Impaired. Therefore, Holders of Allowed Class 8 Claims are entitled to vote to accept or reject this Plan.

**9.**     **"Class 9" – Interests of PGI –** *Impaired*

**a.**     **Classification**

Class 9 consists of all Interests in PGI.

**b.**     **Treatment**

After paying Allowed Administrative Claims (including Professional Fee Claims), 20 Day Administrative Claims, Reclamation Claims, Secured Claims, Priority Tax Claims, Priority Claims and Unsecured Claims against PGI, Holders of Class 9 Interests (which is only AMS) shall receive all remaining Assets of PGI. On or after the Effective Date, after AMS has received its dividend on account of its equity Interests in PGI, PGI will be merged with and into AMS pursuant to the Merger.

### c. Voting

Class 9 is Impaired. Therefore, Holders of Allowed Class 9 Interests are entitled to vote to accept or reject this Plan.

### 10. **"Class 10" – Priority Claims against PGW –** *Not Impaired*

#### a. Classification

Class 10 consists of all Allowed Priority Claims against PGW.

#### b. Treatment

The Plan Administrator shall pay each Holder of an Allowed Class 10 Claim, in relative order of priority pursuant to Bankruptcy Code § 507, in full, in Cash, without interest, on the later of thirty (30) days after (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

#### c. Voting

Class 10 is not Impaired. Holders of Class 10 Claims are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f). Therefore, Holders of Claims in Class 10 are not entitled to vote to accept or reject this Plan.

### 11. **"Class 11" – Secured Claims against PGW –** *Not Impaired*

#### a. Classification

Class 11 consists of all Secured Claims against PGW.

#### b. Treatment

Each Holder of an Allowed Class 11 Claim shall, at the option of the Plan Administrator, either (i) have such Claim reinstated and rendered unimpaired in accordance with Bankruptcy Code § 1124(2), notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of such Claim to demand or to receive payment of such Claim prior to the stated maturity of same from and after the occurrence of a default, (ii) receive Cash in an amount equal to such Claim, in full and complete satisfaction of such Claim, on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable or (iii) receive the collateral securing its Claim in

full and complete satisfaction of such Claim on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

### c. Voting

Class 11 is not Impaired. Holders of Allowed Class 11 Claims are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f). Therefore, Holders of Claims in Class 11 are not entitled to vote to accept or reject this Plan.

## 12. "Class 12" – Unsecured Claims against PGW – *Impaired*

### a. Classification

Class 12 consists of all Allowed Unsecured Claims against PGW.

### b. Treatment

The Plan Administrator shall pay each Holder of an Allowed Class 12 Claim in full, without interest, in Cash on the later of thirty (30) days after (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

### c. Voting

Class 12 is Impaired. Therefore, Holders of Allowed Class 12 Claims are entitled to vote to accept or reject this Plan.

## 13. "Class 13" – Interests of PGW – *Impaired*

### a. Classification

Class 13 consists of all Interests in PGW.

### b. Treatment

After paying any Allowed Administrative Claims (including Professional Fee Claims), 20 Day Administrative Claims, Reclamation Claims, Secured Claims, Priority Tax Claims, Priority Claims and Unsecured Claims against PGW, Disputed Claims and Post-Confirmation Expenses, Holders of Class 13 Interests (which is only PGI) shall receive all remaining Assets of PGW. On or after the Effective Date, after PGI has received its dividend on account of its equity Interests in PGW, PGW will be merged with and into AMS pursuant to the Merger.

### c.     Voting

Class 13 is Impaired.  Therefore, Holders of Interests in Class 13 are entitled to vote to accept or reject this Plan.

## ARTICLE III

## ACCEPTANCE OR REJECTION OF THIS PLAN

### A.     Impaired Classes of Claims Entitled to Vote

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Class 3 (Unsecured Claims against AMS), Class 8 (Unsecured Claims against PGI), Class 9 (Interests of PGI), Class 12 (Unsecured Claims against PGW) and Class 13 (Interests of PGW) are impaired and shall be entitled to vote to accept or reject this Plan.  If and to the extent any Class identified as being unimpaired is impaired (whether as a result of the terms of this Plan or any modification or amendment thereto), such Class shall be entitled to vote to accept or reject this Plan.

### B.     Classes Deemed to Accept this Plan

Class 1 (Priority Claims against AMS), Class 2 (Secured Claims against AMS), Class 6 (Priority Claims against PGI), Class 7 (Secured Claims against PGI), Class 10 (Priority Claims against PGW), and Class 11 (Secured Claims against PGW) are unimpaired by this Plan. Pursuant to Bankruptcy Code § 1126(f), Classes 1, 2, 6, 7, 10, and 11 are conclusively presumed to have accepted this Plan, and the votes of Holders of Claims in Classes 1, 2, 6, 7, 10, and 11 will therefore not be solicited.

### C.     Classes Deemed to Reject this Plan

Holders of Claims and Interests in Class 4 (510(b) Claims against AMS) and Class 5 (Interests of AMS) are not entitled to receive any distribution under this Plan on account of such Claims and Interests.  Pursuant to Bankruptcy Code § 1126(g), Classes 4 and 5 are impaired and are conclusively presumed to have rejected this Plan, and the votes of Holders of Claims and Interests in Classes 4 and 5 therefore will not be solicited.

**D.  Nonconsensual Confirmation**

If any impaired Class fails to accept this Plan, the Plan Proponents intend to request that the Bankruptcy Court confirm this Plan pursuant to Bankruptcy Code § 1129(b) with respect to that Class.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.  Implementation of Plan**

The Plan Proponents propose to implement and consummate this Plan on and after the Effective Date.

**B.  Formation of Reorganized AMS**

Prior to the Effective Date, the Debtors shall continue to wind down their businesses subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. Upon or immediately following the Effective Date, the Merger will be consummated. Upon the consummation of the Merger, title to all Causes of Action, Avoidance Actions, Assets and Cash of the Debtors and their Estates shall vest in Reorganized AMS free and clear of all Liens, Claims and Interests, except as expressly provided in this Plan.

Reorganized AMS will assume all obligations of the Estates to make distributions to Holders of Allowed Claims in accordance with this Plan, and, on and after the Effective Date, the Estates shall be liquidated in accordance with this Plan. As set forth herein, the liquidation and winding up of Reorganized AMS shall become the responsibility of the Plan Administrator who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to any approvals of the Post-Confirmation Committee as set forth in Article IV.G of this Plan. Subject to further order of the Bankruptcy Court, the Plan Administrator shall act as liquidating agent of and for Reorganized AMS and the Estates from and after the Effective Date, subject to any approvals of the Post-Confirmation Committee as set forth in Article IV.G of this Plan.

## C. Appointment and Term of the Plan Administrator

The Plan Proponents shall appoint and designate the initial Plan Administrator at least ten (10) days prior to the Confirmation Hearing, and the Plan Proponents and the initial Plan Administrator shall have entered into a Plan Administrator employment agreement to be filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing. The initial Plan Administrator, and each successor Plan Administrator, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of Reorganized AMS, and (c) the payment of the final distributions to Creditors holding Unsecured Claims against AMS pursuant to the Plan, or (ii) the expiration of the term of such Plan Administrator's employment agreement or such Plan Administrator's resignation, death, incapacity, removal or termination. The Post-Confirmation Committee shall have the right to terminate the Plan Administrator with or without cause and to then appoint a successor Plan Administrator; provided, that the Post-Confirmation Committee shall file the employment agreement between Reorganized AMS and such successor Plan Administrator with the Bankruptcy Court. The Plan Administrator may also be removed by the Bankruptcy Court upon motion for good cause shown by any Creditor.

Upon consummation of the Merger, the Plan Administrator shall be the chief executive officer and sole director of Reorganized AMS and of any subsidiaries of Reorganized AMS for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of Reorganized AMS and any such subsidiaries, with the same power and effect as if each of his or her actions in furtherance of his or her duties as a responsible person and as a board-appointed officer and shareholder-appointed director of Reorganized AMS and of any subsidiaries of Reorganized AMS were explicitly authorized by the appropriate board of directors or shareholders.

## D. Duties of the Plan Administrator

In addition to the duties as set forth elsewhere in this Plan and his or her duties as the sole officer and director of Reorganized AMS, the Plan Administrator, subject to the provisions of Article IV.G, shall have the following duties:

1.    to pursue the sale, liquidation and/or recovery of any and all Assets of the Estates and of Reorganized AMS;

2.    to manage, control and operate Reorganized AMS;

3.    to investigate and, if necessary and appropriate, to prosecute, bring, enforce (or to not pursue, bring or enforce), or to compromise, release, or settle any Causes of Action on behalf of the Estates and Reorganized AMS;

4.    to invest the Cash and other Assets of Reorganized AMS and the Estates;

5.    to file any and all reports, requests for relief or oppositions thereto;

6.    to make any and all distributions required or permitted to be made under this Plan;

7.    to pay out of Reorganized AMS any and all claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all Post-Confirmation Expenses accruing from and after the Effective Date, in accordance with the Administrative Budget;

8.    to employ, supervise and compensate any employees of Reorganized AMS;

9.    to make and file tax returns for any of the Debtors and Reorganized AMS;

10.    to commence and pursue dissolution or winding up proceedings for Reorganized AMS;

11.    subject to the approval of the Post-Confirmation Committee, to commence and pursue dissolution or winding up proceedings for any subsidiaries of Reorganized AMS or to terminate any joint ventures of Reorganized AMS, to the extent necessary or appropriate, and to take any and all actions and execute all documents and instruments as may be necessary or

appropriate in connection with the dissolution, winding up, bankruptcy or insolvency proceedings of any such subsidiary or joint venture;

12.    to request the entry of a Final Decree; and

13.    to take any and all other actions necessary or appropriate to implement this Plan and the liquidation and winding up of the Estates and Reorganized AMS in accordance with applicable law; provided, that nothing herein shall permit the Plan Administrator to terminate or cancel the Debtors' director and officer liability insurance coverage relating to the period following the Petition Date; provided further that, the Plan Administrator shall not renew or extend such insurance coverage without the approval of the Post-Confirmation Committee.

In connection with the execution of his or her duties under this Plan, the Plan Administrator, subject to the provisions of Article IV.G, shall be authorized:

a.    to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his or her duties as liquidating agent of and for the Estates and Reorganized AMS, including to execute such documents and take such other action on behalf of Reorganized AMS;

b.    to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

c.    to authorize and benefit from any insurance policies and rights of indemnification;

d.    to retain professionals (including any of the Debtors' or the Committee's Professionals) or other Persons to assist the Plan Administrator in the liquidation of the Debtors' Assets, without prior Bankruptcy Court approval, and to designate another Person to be the Disbursing Agent;

e.    to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his or her duties as liquidating agent of and for the Estates and Reorganized AMS;

f.    to prepare and deliver to the Post-Confirmation Committee the

Administrative Budget of Reorganized AMS with respect to each 6-month period following the Effective Date and any amendments or modifications thereto;

g.     to seek an order of the Bankruptcy Court approving the compromise, release or settlement of any Cause of Action or the sale or disposition of any Asset, provided that nothing herein shall require the Plan Administrator to seek any such order; and

h.     to employ such other procedures, not inconsistent with this Plan, necessary for the Plan Administrator to perform his or her duties hereunder.

The Plan Administrator shall further have all powers of a chief executive officer and sole director of Reorganized AMS, subject to the supervision of the Post-Confirmation Committee as set forth in Article IV.G of this Plan. In discharging the foregoing responsibilities, the Plan Administrator shall be entitled to exercise and rely upon his or her business judgment. The Plan Administrator shall not be obligated to take any action or to pursue any Causes of Action unless justified in his or her reasonable determination by fact and law, nor shall the Plan Administrator be obligated to take any action that could reasonably cause him or her personal liability. Without limiting the generality of the foregoing, the Plan Administrator may consider the interests of Holders of Allowed Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his or her business judgment. Such authorization and benefits shall also extend to any, each and every successor Plan Administrator, without reservation or limitation.

The reasonable and necessary fees and actual and necessary expenses of the Plan Administrator and the professionals retained by the Plan Administrator shall be paid by the Plan Administrator in accordance with the following procedures:  upon the submission of a fee statement to the Plan Administrator and the Post-Confirmation Committee, the Plan Administrator and the Post-Confirmation Committee shall have ten (10) days from the delivery of a fee statement to give notice of an objection to the fee statement to the professional or Person seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that

remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution. The uncontested portion of each invoice shall be paid within thirty (30) days after its delivery to the Plan Administrator and the Post-Confirmation Committee.

**E.     Liability, Indemnification**

No Protected Party shall be liable for the act or omission of any other Protected Party, nor shall the Plan Administrator or any member of the Post-Confirmation Committee be liable for any act or omission taken or omitted to be taken in his or her capacity as Plan Administrator (including in his or her capacity as a board-appointed officer or manager of Reorganized AMS or any of its subsidiaries) or as a member of the Post-Confirmation Committee, as the case may be, other than acts or omissions resulting from the Plan Administrator's or Post-Confirmation Committee member's willful misconduct, gross negligence or fraud. The Plan Administrator and the Post-Confirmation Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Plan Administrator and the Post-Confirmation Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Plan Administrator or the Post-Confirmation Committee, as the case may be. Notwithstanding such authority, the Plan Administrator and the Post-Confirmation Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Plan Administrator or the Post-Confirmation Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud. Reorganized AMS and the Estates shall indemnify and hold harmless the Plan Administrator, the Post-Confirmation Committee and their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and

expenses (including but not limited to attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Plan Administrator or the Post-Confirmation Committee, as the case may be, or the implementation or administration of this Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

## F.       Dissolution of the Committee

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to Bankruptcy Code § 503(b) for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order. The Professionals retained by the Committee and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date.

## G.       Post-Confirmation Committee

On the Effective Date, the Committee shall be reconstituted as the Post-Confirmation Committee, with the following members: Random House, Inc., Hachette Book Group USA, Inc., Harper Collins Publishers, Penguin Group, and Workman Publishing Co. The bylaws previously adopted by the Committee shall continue to govern the actions of the Post-Confirmation Committee, and the fiduciary duties that applied to the Committee prior to the

Effective Date shall apply to the Post-Confirmation Committee. The Post-Confirmation Committee shall have the duties set forth herein to execute this Plan and to maximize distributions to Holders of Claims. The bylaws previously adopted by the Committee shall continue to govern the actions of the Post-Confirmation Committee, and the fiduciary duties that applied to the Committee prior to the Effective Date, including those set forth in Bankruptcy Code §§ 1102 and 1103, shall apply to the Post-Confirmation Committee. The bylaws may be amended from time to time by the Post-Confirmation Committee in its discretion; provided that the bylaws shall at all times provide that each member of the Post-Confirmation Committee shall recuse itself from participation in meetings regarding, or voting on, any matter related to its individual interests, as a creditor or otherwise.

The Post-Confirmation Committee shall have the duty to take actions in accordance with the provisions of this Plan and in furtherance of the execution of this Plan. Additionally, the Post-Confirmation Committee shall have the following rights and duties:

1.     as set forth in Article IV.C, (i) to terminate the Plan Administrator with or without cause and (ii) upon such termination or upon the resignation, death, incapacity or removal of the Plan Administrator, to appoint a successor Plan Administrator; provided, that the Post-Confirmation Committee shall file the employment agreement between Reorganized AMS and such successor Plan Administrator with the Bankruptcy Court;

2.     to approve any release or indemnity in favor of any third party granted or agreed to by the Plan Administrator;

3.     to authorize the Plan Administrator to commence any Cause of Action or Avoidance Action;

4.     to approve the settlement of any Cause of Action or Avoidance Action if the amount sought to be recovered by the Plan Administrator in the complaint or other document initiating such Cause of Action or Avoidance Action exceeds $150,000 and to approve any application by the Plan Administrator for an order in connection with any such settlement;

5.     to approve the allowance of any Disputed Claim if the final allowed

amount of such Claim exceeds $150,000;

6.      to approve the sale of any Assets by the Plan Administrator if the consideration to be received in respect of such Assets exceeds $250,000 and to approve any application by the Plan Administrator for an order in connection with any such sale of Assets;

7.      to approve with respect to each 6-month period of Reorganized AMS the Administrative Budget prepared by the Plan Administrator and any amendments or modifications thereto;

8.      to approve in advance the Plan Administrator's retention of any professionals (other than the Debtors' or the Committee's Professionals) or a Disbursing Agent other than the Plan Administrator in accordance with the Administrative Budget;

9.      to review all financial information relating to Reorganized AMS and the Estates, which shall be promptly provided by the Plan Administrator upon request by the Post-Confirmation Committee;

10.     to approve of the Plan Administrator's making of any interim distributions to Holders of Allowed Class 3 Claims (Unsecured Claims against AMS) if the Post-Confirmation Committee determines such interim distributions are warranted and economical;

11.     to approve of any investment of Cash or other Assets of the Estates or Reorganized AMS pending distributions to Holders of Allowed Claims or Interests; and

12.     to approve of any distributions to Holders of Allowed Claims or Allowed Interests to be made pursuant to this Plan.

The duties and powers of the Post-Confirmation Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of Reorganized AMS, and (iii) the payment of the final distributions to Creditors holding Unsecured Claims against AMS pursuant to the Plan.

The Post-Confirmation Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with Reorganized AMS and/or Plan Administrator, and the reasonable fees of such counsel shall be paid by the Plan Administrator in accordance

with the following procedures: upon the submission of a fee statement to the Post-Confirmation Committee and the Plan Administrator, the Post-Confirmation Committee and the Plan Administrator shall have ten (10) days from the delivery of a fee statement to give notice of an objection to the fee statement to the professional seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution. The uncontested portion of each invoice shall be paid within thirty (30) days after its delivery to the Post-Confirmation Committee and the Plan Administrator.

### H. Corporate Action

On the Effective Date, the matters under this Plan involving or requiring corporate action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors or shareholders of the Debtors.

### I. Continued Corporate Existence; Dissolution of Reorganized AMS

The board of directors of AMS shall be reconstituted upon consummation of the Merger and, as provided in Article IV.C, shall consist solely of the Plan Administrator. From and after the Effective Date, Reorganized AMS shall remain in existence for the purpose of liquidating and winding up the Estates. After the liquidation and the winding up of the various Estates, the completion of distributions under this Plan and the entry of the Final Decree, the Plan Administrator shall file a certificate of dissolution in the applicable state of incorporation for Reorganized AMS, and Reorganized AMS shall dissolve and cease to exist.

### J. Saturday, Sunday or Legal Holiday

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act

may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**K.      Preservation of All Avoidance Actions and Causes of Action**

From and after the Effective Date, Reorganized AMS and the Plan Administrator, subject to any approval of the Post-Confirmation Committee as set forth in Article IV.G of this Plan, may litigate or settle any avoidance, recovery or subordination actions under Bankruptcy Code §§ 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 or any other Causes of Action or rights to payments or claims that belong to the Debtors that may be pending on the Effective Date or instituted by the Plan Administrator after the Effective Date, except as otherwise expressly provided in this Plan.     Pursuant to Bankruptcy Code § 1123(b)(3)(B), no other Person may pursue any such Causes of Action.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption of Certain Contracts and Leases and Cure Payments**

Fifteen (15) days prior to the Confirmation Hearing, the Plan Proponents shall file the Assumption Schedule, which shall be attached to this Plan as **Exhibit A**.  Objections to any proposed cure payment must be filed and served no later than the Assumption Objection Deadline and shall be adjudicated, if necessary, at the Confirmation Hearing.  Any non-debtor party or Person to an Executory Contract that has not filed an appropriate pleading with the Bankruptcy Court on or before the applicable Assumption Objection Deadline shall be deemed to have waived its right to dispute the cure amount.  All unpaid cure payments under any Executory Contracts that are assumed or assumed and assigned under this Plan shall be made by the Plan Administrator as soon as practicable after the Effective Date but not later than thirty (30) days after the Effective Date, provided that, in the event there is a dispute regarding the amount of any cure payments, the Plan Administrator shall make such cure payments as may be required by Bankruptcy Code § 365(b)(1) within ten (10) days following the entry of a Final Order resolving such dispute.

The Plan Proponents reserve the right to remove any Executory Contract from the Assumption Schedule at any time prior to the Confirmation Hearing.

**B.      Rejection of Remaining Executory Contracts and Unexpired Leases**

On the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to Bankruptcy Code § 365 and (ii) any Executory Contract identified on the Assumption Schedule, each Executory Contract entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be deemed rejected pursuant to Bankruptcy Code §§ 365 and 1123, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code §§ 365 and 1123 as of the Confirmation Date.

**C.      Rejection Damages Bar Date**

Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Advanced Marketing Claims Agent, c/o Epiq Bankruptcy Solutions LLC, 757 Third Avenue, 3rd Floor, New York, New York 10017, and a copy served on counsel for the Debtors and the Plan Administrator, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, Reorganized AMS, the Plan Administrator, their successors, their assigns or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 3 (Unsecured Claims against AMS), Class 8 (Unsecured Claims against PGI) or Class 12 (Unsecured Claims against PGW), depending on which Debtor the Claim is asserted against. Nothing in this Plan extends or modifies any previously applicable Bar Date.

**D.      Insurance Policies**

To the extent any or all of the insurance policies set forth on **Exhibit B** to this Plan are considered to be Executory Contracts, then notwithstanding anything contained in this

Plan to the contrary, this Plan shall constitute a motion to assume the insurance policies set forth on **Exhibit B** to this Plan. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Bankruptcy Code § 365(a) and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on **Exhibit B** to this Plan. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Plan Proponents reserve the right to seek rejection of such insurance policy or other available relief. This Plan shall not affect contracts that have been assumed and assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the certain insurance policies (including any insurance policies that are not executory contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on Exhibit B and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute and benefit from claims) are retained and will be transferred to Reorganized AMS pursuant to this Plan. As set forth in Article IV.D of this Plan, the Plan Administrator shall not be permitted to terminate or cancel the Debtors' director and officer liability insurance coverage relating to the period following the Petition Date; provided that, the Plan Administrator shall not renew or extend such insurance coverage without the approval of the Post-Confirmation Committee.

E.      **Termination of AMS's Deferred Compensation Plan**

Upon the Effective Date, the Deferred Compensation Plan shall terminate without further corporate action. Pursuant to the Plan, the Deferred Compensation Trust shall pay all Cash and any other Assets it may hold in respect of the Deferred Compensation Plan to

Reorganized AMS. **UPON ENTRY OF THE CONFIRMATION ORDER, THE CASH AND ASSETS OF THE DEFERRED COMPENSATION TRUST WILL BE TRANSFERRED TO REORGANIZED AMS AND WILL BECOME PROPERTY OF AMS'S ESTATE AND AVAILABLE FOR DISTRIBUTION TO HOLDERS OF ALLOWED UNSECURED CLAIMS AGAINST AMS. INDIVIDUALS WHO CONTRIBUTED TO THE DEFERRED COMPENSATION PLAN WILL BE TREATED AS HOLDERS OF UNSECURED CLAIMS AGAINST AMS.**

## ARTICLE VI

## DISTRIBUTIONS

A.     **Disbursing Agent**

1.     **Plan Administrator as Disbursing Agent**

The Plan Administrator shall be the Disbursing Agent and the Disbursing Agent shall make all distributions under this Plan. The Plan Administrator, subject to any approval of the Post-Confirmation Committee as set forth in Article IV.G of this Plan, can designate another Person to be the Disbursing Agent under this Plan. The Plan Administrator shall maintain separate bank accounts for PGW and AMS until such time as all Allowed Claims against PGW have been paid in accordance with this Plan.

2.     **Alternative Disbursing Agent Qualification**

No Person other than the Plan Administrator shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Plan Administrator and the Post-Confirmation Committee consent in writing to that Person serving as Disbursing Agent and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under this Plan and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of its duties as the Disbursing Agent under this Plan.

**B.      Time and Manner of Distributions**

Subject to any approval of the Post-Confirmation Committee as set forth in Article IV.G of this Plan, the Plan Administrator shall have the right to make interim distributions to Holders of Allowed Unsecured Claims against AMS if the Plan Administrator determines that such interim distributions are warranted and economical. If the Plan Administrator determines to make interim distributions to Holders of Allowed Unsecured Claims against AMS, the Plan Administrator will determine the amount to be distributed on an interim basis by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Disputed Claims. Amounts withheld will be placed in an interest-bearing account which shall fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Disputed Claims, if any.

At the option of the Plan Administrator, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary). Any distribution of less than $10.00 will be considered de minimus, and Holders of Allowed Claims that are entitled to any distribution of less than $10.00 will not receive any distribution. Such funds shall remain with and vest in Reorganized AMS for distribution to other Holders of Allowed Claims.

**C.      Delivery of Distributions**

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors or Reorganized AMS have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim

or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Plan Administrator has not received a written notice of a change of address.

**D.      Undeliverable Distributions**

If a distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of a Claim shall be made unless and until the Plan Administrator or Disbursing Agent is notified of the then-current address of such Holder, at which time (subject to the terms of the last sentence of this Article VI.D) all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Plan Administrator until such distributions are claimed. All funds or other undeliverable distributions returned to the Plan Administrator in respect of any Claim and not claimed within four (4) months of return shall be forfeited and remain with and vest in Reorganized AMS for distribution to other Holders of Allowed Claims. Any unclaimed funds held by Reorganized AMS at the time the Final Decree is entered may be donated to a charity selected by the Plan Administrator and the Post-Confirmation Committee.

**E.      Claims Administration Responsibility**

**1.      Reservation of Rights to Object to Claims**

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, Reorganized AMS and the Plan Administrator (on behalf of the Estates) reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. Reorganized AMS's and/or the Plan Administrator's failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to Reorganized AMS's and the Plan Administrator's rights to contest

or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim.

### 2. Objections to Claims

Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim. From and after the Effective Date, the Plan Administrator will retain responsibility for administering, disputing, objecting to, compromising or otherwise resolving and making distributions, if any, with respect to all Claims, subject to any approvals of the Post-Confirmation Committee as set forth in Article IV.G of this Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims by the Plan Administrator will be filed and served not later than 180 days after the Effective Date, provided that Reorganized AMS or the Plan Administrator may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of his or her business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

### 3. Filing of Objections

An objection to a Claim shall be deemed properly served on the Holder of such Claim if Reorganized AMS or the Plan Administrator effect service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rule of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases.

### 4. Determination of Claims

Except as otherwise agreed by Reorganized AMS or the Plan Administrator, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed,

reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors, Reorganized AMS or the Plan Administrator on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Article VI.E shall constitute or be deemed a waiver of any claim, right, or Causes of Action that the Debtors or the Plan Administrator may have against any Person in connection with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. § 157.

## F.     Procedures for Treating and Resolving Disputed and Contingent Claims

### 1.     No Distributions Pending Allowance

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Plan Administrator may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim that becomes an Allowed Claim.

### 2.     Claim Estimation

The Debtors or the Plan Administrator may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code § 502(c); provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claims

are subject to estimation pursuant to Bankruptcy Code § 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.

### G.     Setoffs and Recoupment

Reorganized AMS and/or Plan Administrator (as the case may be) may, pursuant to Bankruptcy Code §§ 553 and 558 or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan, any claims or Causes of Action of any nature whatsoever the Debtors may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors of any setoff or recoupment the Debtors may have against the Holder of such Claim, nor of any other claim or Cause of Action.

### H.     Allowance and Disallowance of Claims Subject to Bankruptcy Code § 502

Allowance and disallowance of Claims shall be in all respects subject to the provisions of Bankruptcy Code § 502, including without limitation subsections (b), (d), (e), (g), (h) and (i) thereof.

### I.     Cancellation of Instruments and Agreements

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, or stock, or agreements evidencing, giving rise to, or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures, or agreements shall be discharged, and the Holders thereof shall have no rights against the Debtors, the Plan Administrator, the Estates or Reorganized AMS, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in this Plan.

In connection with the Merger, Reorganized AMS's certificate of incorporation will be revised to include a provision prohibiting the issuance of any non-voting equity

securities, and will otherwise comply with Bankruptcy Code §§ 1123(a)(6) and (7). The amended certificate of incorporation of Reorganized AMS will further provide for the issuance of one share of stock. This share will be issued to the Plan Administrator, who will hold such share in trust for the benefit of the Holders of Allowed Claims. The Plan Administrator shall have the ability to vote the interests of Reorganized AMS through his or her possession and voting control of the post-Effective Date stock of Reorganized AMS. Under Bankruptcy Code § 1145, the issuance of the sole share of Reorganized AMS to the Plan Administrator under this Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

**J.      No Interest on Claims**

Unless otherwise specifically provided for in this Plan, the Confirmation Order or a postpetition agreement in writing between the Debtors and a Holder of a Claim and approved by an order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**K.      Withholding Taxes**

The Plan Administrator shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan. As a condition to making any distribution under this Plan, the Plan Administrator may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Plan Administrator may deem necessary to comply with applicable tax reporting and withholding laws.

**L.  Reports**

From the Effective Date, until a Final Decree is entered, the Plan Administrator shall submit quarterly reports to the United States Trustee setting forth all receipts and disbursements of Reorganized AMS as required by the United States Trustee guidelines.

## ARTICLE VII

## EFFECT OF CONFIRMATION

**A.  Injunction**

**Except as otherwise expressly provided in this Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of this Plan or any documents provided for or contemplated in this Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (ii) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (iii) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (iv) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to any Protected Party or any property of any Protected Party with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (v) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Interest.  Nothing contained in this Article VII.A shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or**

prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtors, the Plan Administrator or Reorganized AMS under this Plan. The Confirmation Order shall also constitute an injunction enjoining any Person from enforcing or attempting to enforce any claim or cause of action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article VI.K of this Plan have been made or are not yet due under Article VI.K of this Plan.

B.      **Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code §§ 105 or 362, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of Reorganized AMS.

C.      **Exculpation**

None of the Protected Parties shall have or incur any liability for, and each Protected Party is hereby released from, any claim, cause of action or liability to any other Protected Party, to any Holder of a Claim or an Interest, or to any other party in interest, for any act or omission taken in connection with, arising from or relating to the Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of this Plan, the consummation of this Plan, and/or the administration of this Plan and/or the property to be distributed under this Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action or liability.

Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of Bankruptcy Code § 1125(e).

The above provision shall not be deemed or act to release any claims, Causes of Action or liabilities that Reorganized AMS, the Debtors' Estates or any other party in interest may have against any Person (including, without limitation, any Protected Party) for any act, omission, failure to act that occurred prior to the Petition Date and shall not be deemed or act to release any Avoidance Actions and/or Causes of Action.

## ARTICLE VIII

## CONDITIONS PRECEDENT

A.      **Condition Precedent to Effective Date**

This Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

1.      The Bankruptcy Court shall have approved a disclosure statement with respect to this Plan in form and substance acceptable to the Plan Proponents in their sole and absolute discretion;

2.      The Confirmation Order shall be in form and substance acceptable to the Plan Proponents in their sole and absolute discretion;

3.      The Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to any stay of effectiveness, the Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under Bankruptcy Code § 1144 shall have been made, or, if made, shall remain pending; and

4.      The appointment of the Plan Administrator shall have been confirmed by order of the Bankruptcy Court.

B.      **Revocation, Withdrawal or Non-Consummation of Plan**

If, after the Confirmation Order is entered, each of the conditions precedent to the Effective Date have not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Plan Proponents, the Confirmation Order may be

vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions precedent to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. A condition precedent to the Effective Date may only be waived by a writing executed by the Plan Proponents. If the Confirmation Order is vacated pursuant to this Article VIII.B., this Plan shall be null and void in all respects, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors or (iii) prejudice in any manner the rights of the Plan Proponents in the Chapter 11 Cases.

## ARTICLE IX

## ADMINISTRATIVE PROVISIONS

### A.    Retention of Jurisdiction by the Bankruptcy Court

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to Bankruptcy Code §§ 105(a) and 1142, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including without limitation the following matters:

1.    to hear and determine motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which Reorganized AMS, as successor-in-interest to any of the Debtors, is a party or with respect to which Reorganized AMS, as successor-in-interest to any of the Debtors, may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of cure, if any, required to be paid;

2.    to adjudicate any and all disputes over the ownership of a Claim or Interest;

3.      to adjudicate any and all disputes arising from or relating to the distribution or retention of consideration under this Plan;

4.      to adjudicate any and all disputes between the Plan Administrator and/or Reorganized AMS, on the one hand, and the Post-Confirmation Committee, on the other hand;

5.      to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

6.      to hear and determine any and all objections to the allowance or estimation of Claims filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow or disallow any Claim, in whole or in part;

7.      to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

8.      to issue orders in aid of execution, implementation or consummation of this Plan;

9.      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order including disputes arising under agreements, documents or instruments executed in connection with this Plan;

10.     to consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including without limitation the Confirmation Order;

11.     to hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under Bankruptcy Code §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4);

12.     to hear and determine all motions requesting allowance of an Administrative Claim;

13.     to determine requests for the payment of Claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation and reimbursement of expenses of parties

entitled thereto;

14.     to hear and determine all Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets of Reorganized AMS, as successor-in-interest to any of the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and all controversies and issues arising from or relating to any of the foregoing;

15.     to hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

16.     to hear any other matter not inconsistent with the Bankruptcy Code;

17.     to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

18.     to enter the Final Decree closing the Chapter 11 Cases; and

19.     to enforce all orders previously entered by the Bankruptcy Court.

**B.     Payment of Statutory Fees**

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date. All fees payable after the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors or the Plan Administrator out of the Assets of the Estates.

**C.     Headings**

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

## D.     Binding Effect of Plan

Except as otherwise provided in Bankruptcy Code § 1141(d)(3), on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, Reorganized AMS and their respective successors or assigns, whether or not the Claim or Interest of such Holders is impaired under this Plan and whether or not such Holder has accepted this Plan. The rights, benefits and obligations of any entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the Plan Administrator and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

## E.     Final Order

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Plan Proponents upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

## F.     Withholding and Reporting Requirements

In connection with this Plan and all instruments issued in connection herewith and distributions hereunder, Reorganized AMS and the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

## G.     Tax Exemption

Pursuant to Bankruptcy Code § 1146, any transfers from a Debtor, Reorganized AMS or the Plan Administrator to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' or Reorganized AMS's real or personal property, or the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in

implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Plan Administrator of the Debtors' or Reorganized AMS's property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfers of property by the Plan Administrator) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

## H.      Governing Law

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) and, with respect to the Debtors incorporated in Delaware and Reorganized AMS, corporate governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles. Corporate governance matters relating to any Debtor not incorporated in Delaware shall be governed by the law of the state of incorporation of the applicable Debtor.

## I.      Severability

After the Effective Date, should the Bankruptcy Court, or any other court of competent jurisdiction, determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such

a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**J.      Revocation**

The Plan Proponents reserve the right to revoke and withdraw this Plan prior to the Confirmation Date. If the Plan Proponents revoke or withdraw this Plan, then this Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Committee or any other Person or to prejudice in any manner the rights of the Debtors, the Committee or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors and/or the Committee.

**K.      Construction**

The rules of construction as set forth in Bankruptcy Code § 102 shall apply to the construction of this Plan.

**L.      Plan Controls Disclosure Statement**

In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.

**M.      Amendments and Modifications**

The Plan Proponents may alter, amend or modify this Plan under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in Bankruptcy Code § 1101(2)) of this Plan with respect to any Debtor or Reorganized AMS, Reorganized AMS or the Plan Administrator may, subject to the approval of the Post-Confirmation Committee, institute proceedings in the Bankruptcy Court pursuant to Bankruptcy Code § 1127(b) to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects

of this Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties-in-interest shall not be required.

**N.      Notices**

Any notices required under this Plan or any notices or requests of the Debtors or the Plan Administrator by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

To the Debtors, Reorganized AMS and the Plan Administrator:

Advanced Marketing Services, Inc.
Publishers Group West Incorporated
Publishers Group Incorporated
Attention:  Curtis R. Smith
13475 Danielson Street, Suite 110
Poway, California 92064

With a copy to:

Richards, Layton & Finger, PA
Attention:  Mark D. Collins, Esq.
One Rodney Square
Box 551
Wilmington, DE  19899

O'Melveny & Myers LLP
Attention:  Suzzanne S. Uhland, Esq.
275 Battery Street
San Francisco, CA  94111

With a copy to:

Lowenstein Sandler PC
Attention:  Bruce Buechler, Esq.
65 Livingston Avenue
Roseland, NJ  07068

## O.    Filing of Additional Documents

On or before substantial consummation of this Plan, the Plan Proponents may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## P.    Direction to a Party

From and after the Effective Date, the Plan Proponents may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

## Q.    Successors and Assigns

The rights, duties and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

## R.    Waiver of Subordination

Notwithstanding any provision of this Plan to the contrary, all Holders of Claims shall be deemed to have waived any and all contractual subordination rights which they may have with respect to the distributions made pursuant to this Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving distributions under this Plan.

Dated:  November 13, 2007

Respectfully submitted,

**Advanced Marketing Services, Inc.**

By: _____/s/ Curtis R. Smith_____
        Name:  Curtis R. Smith
        Title:  Chief Executive Officer

**Publishers Group Incorporated**

By: _____/s/ Curtis R. Smith_____
        Name:  Curtis R. Smith
        Title:  Sole Director

**Publishers Group West Incorporated**

By: _____/s/ Curtis R. Smith_____
        Name:  Curtis R. Smith
        Title:  Sole Director

**Official Committee of Unsecured Creditors**

By: _____/s/ William C. Sinnott_____
        Name:  William C. Sinnott of Random
                  House, Inc.
        Title:  Chairman of the Committee

## Exhibit A

## Assumption Schedule[2]

| Contract | Cure Amount |
|---|---|
| Shareholders' Agreement dated as of September 14, 1999 by and among Kevin Williams, 556521 B.C. LTD., 590345 B.C. LTD, Advanced Marketing Services, Inc. and Raincoast Book Distribution Ltd. | None. |
| National Staffing Agreement dated as of January 26, 2004 by and among Spherion Atlantic Workforce LLC, Spherion Pacific Workforce LLC and Advanced Marketing Services, Inc. | None. |
| Health and Welfare Benefits Administration Services Agreement effective as of January 1, 2006 by and among TRI-AD Actuaries, Inc. and Advanced Marketing Services, Inc. | None. |
| Intersourcing Service Model Agreement effective as of December 24, 2002 by and among The Ultimate Software Group, Inc. and Advanced Marketing Services, Inc. | None. |
| Property Tax Consulting Service Agreement dated as of September 29, 2006 by and among Advanced Marketing Services, Inc. and OutSourcing Solutions Group, LLC | None. |
| General Agreement to Perform Corporate Services by and among California Bank & Trust and Advanced Marketing Services, Inc. | None. |
| Corporate Sweep Agreement and Disclosure Schedule by and among California Bank & Trust, as agent, and Advanced Marketing Services, Inc. | None. |
| Agreement by and among Thomson Financial and Advanced Marketing Services, Inc. regarding investor website hosting | None. |
| Customer Agreement Terms & Conditions by and among Verizon Wireless Advanced Marketing Services, Inc. | None. |

Exhibit B to the Plan is hereby incorporated by reference.

---

[2] Each agreement listed on this Exhibit A shall include all amendments to such agreement. The inclusion of post-petition agreements on this Exhibit A is for clarity only and does not by negative implication or otherwise result in the "rejection" of any postpetition agreement not listed with specificity. Additionally, the Plan Proponents reserve the right to contest the characterization of any agreement listed on this Exhibit A as an executory contract.

## Exhibit B

## Insurance Policies

| COVERAGE/POLICY #/CARRIER |
|---|
| **Workers' Compensation** |
| WA2-16D-035346-106 |
| WC2-161-035346-116 |
| Liberty Mutual Insurance Company |
| **Property (Multi-Peril Casualty) & General Liability** |
| Y-630-5792C220-TIL-06 |
| Travelers Property Casualty Company of America |
| **Commercial Crime** |
| SAA 517-76-99 |
| Great American Insurance Company |
| **Umbrella** |
| YSM-CUP-5792C220-TIL-06 |
| Travelers Property Casualty Company of America |
| **Excess Liability** |
| 93636920 |
| Chubb Insurance Company |
| **Automobiles** |
| Y-810-5792C220-TIL-06 |
| Travelers Property Casualty Company of America |
| **Foreign Liability – Global Companion Policy** |
| GB06101033 |
| St. Paul Fire & Marine Insurance Company |
| **Directors & Officers Liability** |
| ELU0925529-06 |
| XL Specialty Insurance Company |
| **Directors & Officers Liability – Excess** |
| HS-0303-1728-051206 |
| Hudson Specialty Insurance Company |
| **Directors & Officers Liability** |
| 965 44 58 |
| National Union Fire Insurance Co. of Pittsburgh, PA |
| **Medical (HMO, POS and PPO Plans) and Dental (PPO Plan)** |
| 3192716 |
| CIGNA |
| **Life Insurance (Basic & Supplemental)** |
| FLX-960934 |
| CIGNA |

| COVERAGE/POLICY #/CARRIER |
| --- |
| **AD&D Insurance** |
| OK 960964 |
| CIGNA |
| **Short Term Disability** |
| LK-750184 |
| CIGNA |
| **Long Term Disability** |
| LK-960790 |
| CIGNA |
| **Business Travel Accident Insurance** |
| ABL 961281 |
| CIGNA |
| **Vision Plan** |
| 12252754 |
| Vision Service Plan |
| **401k Retirement Savings Plan** |
| 5-15553 |
| Principal Financial Group |